**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **AQUA CONNECT, INC., a Nevada corporation, and STRATEGIC TECHNOLOGY PARTNERS, LLC, a Nevada limited liability company,**<br><br>              **Plaintiffs,**<br><br>    **v.**<br><br>**TEAMVIEWER US, LLC,**<br><br>              **Defendant,** | Civil Action No. 1:18-cv-01572-MN<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**Judge Maryellen Noreika** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Dated: September 20, 2019

Of Counsel:

LAW OFFICE OF RYAN E. HATCH
Ryan E. Hatch (*admitted Pro Hac Vice*)
13323 W. Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel. 310-279-5076
Fax. 310-693-5328
Email: ryan@ryanehatch.com

STAMOULIS & WEINBLATT LLC

Stamatios Stamoulis (DE Bar No. 4606)
Richard C. Weinblatt (DE Bar No. 5080)
800 N West Street, Third Floor
Wilmington, DE 19801
Tel: (302) 999-1540
Stamoulis@swdelaw.com
Weinblatt@swdelaw.com

Attorneys for Plaintiffs,
Aqua Connect, Inc., and Strategic Technology
Partners, LLC

1

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDING ........................................................... 1

II.   SUMMARY OF ARGUMENT ................................................................................. 1

III.  STATEMENT OF FACTS ....................................................................................... 2

     A.    The Claimed Inventions of the Patents-in-Suit .................................................. 2

     B.    The Problems Solved by the Claimed Inventions ................................................ 6

     C.    The Benefits of the Claimed Inventions ............................................................. 8

IV.  LEGAL STANDARDS ........................................................................................... 9

     A.    Rule 12(c) Motions for Judgment on the Pleadings ............................................ 9

     B.    Patent Eligibility Under 35 U.S.C. § 101 ......................................................... 10

V.   ARGUMENT ...................................................................................................... 11

     A.    The Claims are Directed to Specific Methods and Systems for Updating User

           Data Between Computer Processes in Separate Contexts in Mach-Derived

           Systems, Which Is Not an Abstract Idea Under *Alice* Step One ......................... 11

     B.    The Claims Include Inventive Concepts Under *Alice* Step Two ......................... 16

     C.    Factual and Claim Construction Disputes Preclude Judgment on the Pleadings.. 19

VI.  CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)....................................................................20

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ................................................................... *passim*

*Ancora Techs. v. HTC Am., Inc.*,
  908 F.3d 1343 (Fed. Cir. 2018).........................................11, 12, 13, 15

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)...............................................17, 18

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)...............................................11, 17, 20

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018).........................................12, 15

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)....................................................................10

*Cellspin*,
  927 F.3d at 1317 ...........................................................................18

*Cf. Bruni v. City of Pittsburgh*,
  824 F.3d 353 (3d Cir. 2016)....................................................................10

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018)....................................................16

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018).........................................10, 11, 14, 16

*Electric Power Group, LLC v. Alstom*
  830 F.3d 1350 (Fed. Cir. 2016)....................................................15

*Encoditech LLC v. Qardio, Inc.*,
  2019 U.S. Dist. LEXIS 102374 (D. Del. 2019) ..............................20

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016).........................................12, 15, 16

*Finjan, Inc. v. Blue Coat System, Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018)............................................................11, 12, 15

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
   222 F.3d 951 (Fed. Cir. 2000)............................................................10

*Intellectual Ventures I LLC v. AT&T Mobility II LLC*
   235 F. Supp. 3d 577 (D. Del. 2016)....................................................15

*Maio v. Aetna, Inc.*,
   221 F.3d 472 (3d Cir. 2000)...........................................................9, 10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012)......................................................................11, 17

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)...........................................................17

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
   38 F.3d 1380 (3d Cir. 1994).............................................................10

*Rosenau v. Unifund Corp.*,
   539 F.3d 218 (3d Cir. 2008)...............................................................9

*Turbe v. Gov't of Virgin Islands*,
   938 F.2d 427 (3d Cir. 1991)............................................................9, 10

*Venetec Int'l, Inc. v. Nexus Med., LLC*,
   541 F.Supp.2d 612 (D. Del. 2008)......................................................10

**Statutes**

35 U.S.C. § 101................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...................................................................9, 20

Fed. R. Civ. P. 12(c) ...................................................................1, 9, 10, 11

4

## I.      NATURE AND STAGE OF THE PROCEEDING

This is a patent infringement action, filed on October 11, 2018.  D.I. 1.  Plaintiffs Aqua

Connect, Inc. and Strategic Technology Partners, LLC (collectively, "Plaintiffs") contend that

Defendant TeamViewer US, LLC ("Defendant") infringes U.S. Patent No. RE46,386 (the "'386

Patent") and U.S. Patent No. 8,924,502 (the "'502 Patent") (collectively, the "Patents-in-Suit").

*Id.*[1]  On September 6, 2019, Defendant filed a Rule 12(c) Motion for Judgment on the Pleadings

contending that the Patents-in-Suit are invalid under 35 U.S.C. § 101.  D.I. 71.  Plaintiffs oppose

the motion.

## II.     SUMMARY OF ARGUMENT

1.  The claims are not directed to an abstract idea under *Alice* step one.  The claims are

directed to specific methods and systems for updating user data between computer processes in

separate contexts in Mach-derived systems. This is an improvement in computer technology that

solved the problem of how to securely and synchronously update user data in Mach-derived

systems in a timely manner.

2.  The claims include inventive concepts under *Alice* step two.  The claims are directed

to the non-conventional and non-generic arrangement of an agent client and agent server, in

separate processes in separate contexts of a Mach-derived system, and transmitting updated data

by the agent client across a computer network to a remote system.  This overcame existing

problems in prior art terminal server systems.  By keeping the agent server and agent client in

separate contexts, functions associated with one user context can be isolated to reduce their

impact on other existing user contexts, and the host operating system.  This prevented actions

---

[1] Citations to the '502 Patent specification should be understood to include equivalent portions of
the '385 Patent specification, as the specifications are identical.

taken in one user context from affecting one or more other user contexts.   The Complaint also includes plausible and specific factual allegations that the claims are inventive.

3.   Factual and claim construction disputes preclude judgment on the pleadings.   The parties dispute the meaning of "agent client," "agent server," "Mach-derived," and nine other terms.   The parties also dispute facts relating to whether the claims are directed to non-conventional and non-generic technology.

## III.   STATEMENT OF FACTS

### A.   The Claimed Inventions of the Patents-in-Suit

The claimed inventions are directed to specific methods and systems for updating user data between computer processes in separate contexts in a Mach-derived[2] system.   The inventions allowed for updating user interface information securely and in a timely fashion in a Mach-based system, for example a terminal server environment, and for transporting data from a user's session to allow for improved communications with a remote device.   *See, e.g.*, '502 Patent, col. 2, lines 23-28.

Each claim covers a specific arrangement of elements in a Mach-derived[3] system.   For example, independent claim 1 of the '386 Patent recites:

---

[2] During prosecution, the inventor explained that "Mach" refers to an operating system kernel developed at Carnegie Mellon University (CMU) from 1985 to 1994. Declaration of Joseph Cohen ("Cohen Decl.,") at ¶ 2, attached hereto in the Declaration of Ryan E. Hatch ("Hatch Decl."), Ex. A).  Mach's derivatives are the basis of the modem operating system kernel in Apple's OS X operating systems, among others. *See Id.* at ¶ 3.

[3] The claim limitation "Mach-derived" is present in each of the claims.  *See* '502 Patent, col. 7, lines 42, 45, and 48, col 8, lines 33 and 44, col. 10, lines 17, 37, 61 and 64, col. 11, lines 4, 14, 16, 53 and 56, col. 12, lines 5, 30, 32-33, 37, 39, 49, 42, 45, 50 and 53, col. 13, lines 20, 23 and 26, col. 14, lines 22, 28 and 34, col. 15, line 40; '386 Patent, col. 7, lines 56 and 63, col. 8, lines 64 and 67, col. 9, line 9,  col. 10, lines 2, 51, 52, 54 and 7, col. 11, lines 5, 7, 12, 25, 26, 30, 52, 57 and 65, col. 12, lines 6, 11, 14, 18, 32, 37, 41, 60 and 64, col. 13, lines 1 and 15, and col. 14, lines 11, 16, 19, 22 and 27.

1. A computer-implemented method for updating a user instance, the method comprising:  creating at least one user computer context configured to be executed on a Mach-derived system computing device comprising at least one computer processor, wherein each of the at least one user computer context incorporates is configured to incorporate an agent server;

associating the agent server with an agent client, wherein the agent client and the agent server are configured to be executed on the Mach-derived system computing device, but in separate processes and in separate Mach contexts;

generating, by the agent server, data corresponding to an updated user instance, wherein the data corresponding to the undated user instance comprises user computer data, wherein the user computer data comprises at least one of:

display data, audio data, biometric data, input data, image data, output data, video data, streaming data, touch screen data, keypad data, joystick data, touchpad data, keyboard data, mouse data, metadata, smart device data, input device data, data from another device appropriate for receiving input directly or indirectly from the user, computer monitor data, speaker data, projector data, data from another device appropriate for outputting data, or output device data;

determining, by the agent sever server, that any portion of the user computer data has been updated;  transferring the data to corresponding to the updated user instance between the agent server and the agent client via a computer system communication facility based on said determining, wherein said transferring comprises: transferring at least one of: the user computer data, or metadata corresponding to a shared memory comprising, wherein said shared memory comprises the any portion of the updated user computer data, between the agent server and the agent client, wherein at least one of the user computer data or the metadata is transmitted via the computer system communication facility, wherein the computer system communication facility comprises at least one of: a socket, a file, a port, a shared computer memory, or a pipe; and

transmitting the data corresponding to the updated user instance over a communications network to a remote computer system for update of the user instance based on the data corresponding to the updated user instance, wherein said transmitting comprises: transmitting at least one of the user computer data, or the metadata, over the communications network to the remote computer system for update of the user instance based on the updated user computer data or metadata.

'386 Patent, col. 7, line 53 – col. 8, line 47.  Claim 1 of the '502 Patent recites:

1. A method for transmitting data, the method comprising:
creating a first context on a Mach-derived system comprising at least one processor,
wherein the first context incorporates an agent server;
creating a second context on the Mach-derived system,
wherein the second context incorporates an agent client;
wherein the agent client and the agent server are executed on the Mach-derived system, but in separate processes;

3

generating, by the agent server, the data corresponding to an updated user instance, wherein the data corresponding to the updated user instance comprises user data, wherein the user data comprises at least one of: display data, audio data, biometric data, input data, image data, output data, video data, streaming data, touch screen data, keypad data, joystick data, touchpad data, keyboard data, mouse data, metadata, smart device data, input device data, data from another device appropriate for receiving input directly or indirectly from the user, computer monitor data, speaker data, projector data, data from another device appropriate for outputting data, or output device data;

determining, by the agent server, that any portion of the user data has been updated;

transferring the data to or from the agent client via a system communication facility based on said determining, wherein said transferring comprises: transferring at least one of: the user data, or metadata corresponding to a shared memory comprising the any portion of the updated user data, between the agent server and the agent client, wherein at least one of the user data or the metadata is transmitted via the system communication facility, wherein the system communication facility comprises at least one of: a socket, a file, a port, or a pipe; and transmitting from the agent client the data over a network to a remote system for update of the user instance based on the data, wherein said transmitting comprises: transmitting at least one of the user data, or the metadata, over the network to the remote system for update of the user instance based on the updated user data or metadata.

*See* '502 Patent, col. 7, line 41 – col. 8, line 16.

The specific arrangement of elements in the claimed invention is shown in part in the exemplary embodiment of Figure 1, as follows:



FIG. 1

With reference to Figure 1 and the claims, the Mach-derived network system includes a

4

first Mach context[4] (104) that incorporates an agent server (106), and a second context that incorporates an agent client (110), wherein the agent client and the agent server are run on the Mach-derived network system but in separate processes (106 and 110) and in separate contexts (e.g. user context 104 and a second (e.g. system) context).  *See* '502 Patent, col. 3, lines 15-23, and col. 3, line 65 – col. 4, line 2.  The agent client and agent server are computer processes, not a keyboard, video output or mouse. *See, e.g.*, *Id.*, col. 7, lines 47-48.

The claims recite that the agent server (106) generates data corresponding to an updated user instance.  *Id.*, col. 7, lines 49-50.  The data corresponding to a user instance relates, for example, to the graphical user interface of a user.  *Id.*, col. 3, lines 59-62.  It may comprise display data, audio data, video data, keyboard data, mouse data, or other types of data.  *Id.*, col. 7, lines 53-62.  The data may be transferred to the agent client (110) via a system communication facility.  *Id.*, col. 4, lines 25-29 and 47-60, and col. 7, line 65 – col. 8, line 9.  The transfer includes at least one of transferring the user data, which is depicted by the arrows between the KVM Agent Client 110 and KVM Agent Server 106), or metadata corresponding to a shared memory (112), which is depicted by the arrows to and from the memory 122.  *Id.*

As recited in the claims, the system communication facility used to transfer data comprises at least one of: a socket, a file, a port, or a pipe.  *Id.*  Data is then transmitted from the agent client (110) over the network (114) to a computing device (124), for update of the user instance (e.g. the output device 118) based on the data.  *Id.*, col. 4, line 65 – col. 5, line 13.  The invention covers a unique computer architecture comprised of a specific arrangement of elements

---

[4] A *Mach context* is a specific operating system structure used in Mach-derived systems to control access to information. For example, "separate memory utilization, file system access, and/or process execution can be maintained for each user context." '502 Patent, col. 3, line 67 – col. 4, line 2; *see also* Cohen Decl. at ¶¶ 9-15 (describing contexts in the Mach operating system).

in a Mach-derived system. The other claims of the Patents-in Suit are similarly directed to this unique Mach-derived system architecture. *See* '502 Patent, independent claims 1, 8, 25, 27, 36, 37 and 38; '386 Patent, independent claims, 1, 8, 25 and 27. In addition, the dependent claims add nine further types of limitations, relating to the system communication facility ('502 Patent, claims 2, 3, 16-18, '386 Patent, claims 2-4, ), the communications protocol or protocol translator ('502 Patent, claims 5, 6, 20, 28, '386 Patent, claims 5-6, 20, 28), the storage media ('502 Patent, claim 9, '386 Patent, claim 9), the type of Mach-derived system or remote computer ('502 Patent, claims 10, 11, 21, 22, 31-35, '386 Patent, claims 10-11, 21, 22, 31-35), the input and output facilities and rendering output ('502 Patent, claims 12, 13, 14, 29, '386 Patent, claims 12-14, 29), the communications network ('502 Patent, claims 15, 26, '386 Patent, claims 15, 26), shared memory ('502 Patent, claims 19, 24, '386 Patent, claims 19, 24), the agent client or agent server ('502 Patent, claim 24, '386 Patent, claims 23, 24), and supporting a plurality of users and connections ('502 Patent, claims 30, 39-42, '386 Patent, claims 4, 7, 30). This adds even more specificity to the claims.

### B. The Problems Solved by the Claimed Inventions

The claimed invention solved a specific problem that arose in Mach-derived systems. The inventor recognized that in prior art terminal server[5] environments, implementing multiple independent instances of applications "leads to issues in being able to securely and synchronously update the graphical display of server output." *Id.*, col. 2, lines 14-18. "Simply transmitting the output from certain output agents, such as via window server, for example, may

---

[5] Terminal server applications facilitate remote access to computers, and are used by educational institutions, government agencies, and commercial organizations. '502 patent, col. 1, lines 40-67. Commercial organizations use terminal servers to manage and control users, and permit remote access via mobile or handheld devices. *Id.*, col. 1, line 59-67. For example, the remote system can be a desktop computer at an employee's home and the host system can be a server at an employer's site." *Id.*, col. 3, lines 56-58.

lead to information being passed across user session boundaries, as the graphical data available would be that created by the most recent client session to access the application." *Id.*, col. 2, lines 18-23.  As a result, a need existed for "an improved method for updating graphical display information securely and in a timely fashion in a terminal server environment," and "for an improved means to transport data from a user's session in a terminal server environment, allowing improved communications with a remote device." *Id.*, col. 2, lines 23-28.

To address these needs, the inventor created the unique software architecture that separated processes into separate Mach contexts, and provided a way for the processes to communicate effectively.  By keeping the agent server and agent client in separate contexts, "actions and/or functions associated with one user context can be isolated to reduce their impact on one or more other existing user contexts and the host operating system." *Id.*, col. 4, lines 2-5. This prevented actions taken in one user context from affecting one or more other user contexts. *Id.*, col. 4, lines 6-9.

The claimed inventions also solved a problem that existed in Mach-derived operating systems.  Mach-derived systems operate differently than Windows or other non-Mach operating systems.  As explained during prosecution, "on a Mach platform a process does not have access to the user's session from outside the Mach context," whereas "[i]n a non-Mach operating system platform input devices and output devices typically interface in a lower part of the non-Mach operating system, such as in the kernel or a daemon that is started by the operating system on startup." '502 Patent Prosecution History, May 27, 2014 Amendment (Hatch Decl., Ex. B.) at 21.  As a result of the different levels in which I/O devices operate, implementing multiple independent instances of applications on Mach-derived systems would lead to issues in being able to securely and synchronously update the graphical display. '502 Patent, col. 2, lines 14-18.

## C.      The Benefits of the Claimed Inventions

The claimed invention led to significant improvements in maintenance, multi-user functionality, and security on Mach-derived systems.  The specification teaches that "a user context can be given special privileges to monitor or interact with one or more other user contexts, such as for maintenance purposes."  *Id*., col. 4, lines 9-12.  This allows a user session being controlled by a user on a remote computer to run in the background on the host computer, as opposed to being displayed on the local screen of the host computer.  Dkt. 1 ("Complaint") at ¶ 7.  The claimed invention also enabled multi-user terminal server functionality and improved security.  *Id*.  Because the agent client remained in the system context and could communicate with an agent server in a user context, any number of users could connect to the agent client and log in, at which point a new agent server for just that user would be created and would interact with the agent client.  *Id*.  Using the agent server as an intermediary allowed applications to efficiently manage the network connection, for example, by prioritizing connections that are time sensitive.  *Id*.  The claimed invention also improved security.  Because it allowed for true isolation of user tasks within a user context and did not require access to user tasks from the system context, the data of each user was more secure than regular multi-user functionality.  *Id*.

The claimed inventions also solved problems associated with conventional prior art remote desktop applications.  Conventional remote desktop applications exposed the user context directly to the network and therefore to the possibility of malicious code accessing the user context.  *Id*., ¶ 8.  They did not allow a second user to connect and start up his or her own session with its own context, or allow a user to connect to a computer using his or her own credentials if another user was logged in on the host computer, even if that other user was not using the computer at the time.  *Id*.  They failed to allow a remote user session to run in the background

8

on the host computer. *Id*. Conventional solutions required establishing, tearing down, and then reestablishing a connection with the remote computer, which required additional system resources and led to delays and connectivity issues. *Id*. The claimed inventions solved these and other problems. *Id.* at ¶¶ 8-9.

## IV.    LEGAL STANDARDS

### A.    Rule 12(c) Motions for Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed — but early enough not to delay trial." When evaluating a motion for judgment on the pleadings, the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). This is the same standard that applies to a Rule 12(b)(6) motion to dismiss. *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

A Rule 12(c) motion will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221. "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F.Supp.2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burlington Coat Factory*, 114 F.3d at 1420. Thus, a court may grant a motion for

judgment on the pleadings (like a motion to dismiss) only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio*, 221 F.3d at 482 (3d Cir. 2000). Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved." *Turbe*, 938 F.2d at 428.

The Court may consider matters of public record as well as authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). Matters of public record include the prosecution history. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018), *citing Cf. Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016), *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000).

### B.     Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the patent statute provides that "whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." Interpreting section 101, the Supreme Court has invented a two-step approach for determining whether a claim is drawn to patent-ineligible laws of nature, natural phenomena, or abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012). The first step is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 216. If so is, the second step is to identify "whether the claims do significantly more than simply describe these natural relations," i.e. do they "add enough . . . to"

10

the patent ineligible law of nature or naturally occurring phenomenon to render the claims patentable. *Mayo*, 566 U.S. at 77. Only then can the claim be found ineligible under section 101.

Although patent eligibility is ultimately a question of law, the determination has factual underpinnings that can render it inappropriate for resolution on a motion to dismiss or at summary judgment. *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018). Patent eligibility can only be determined on the pleadings under Rule 12(c) when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law. *Data Engine*, 906 F.3d at 1007 (Fed. Cir. 2018).

## V.     ARGUMENT

### A.     The Claims are Directed to Specific Methods and Systems for Updating User Data Between Computer Processes in Separate Contexts in Mach-Derived Systems, Which Is Not an Abstract Idea Under *Alice* Step One

Under *Alice* step one, courts examine the patent's "claimed advance to determine whether the claims are directed to an abstract idea." *Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343, 1347 (Fed. Cir. 2018), *citing Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *Ancora*, 908 F.3d. at 1347, citing *Finjan*, 879 F.3d 1303, (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 at 1335-36 (Fed. Cir. 2016)), *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285-86 (Fed. Cir. 2018). Computers are improved not only through changes in hardware; "[s]oftware can make non-abstract improvements to computer technology…." *Ancora*, 908 F.3d.

11

at 1347, citing *Enfish*, 822 F.3d at 1335, *Finjan*, 879 F.3d at 1304.   The Federal Circuit has repeatedly held claims to pass muster under *Alice* step one when sufficiently focused on such improvements.

The claims recite the agent client and agent server in separate processes in separate contexts of a Mach-derived system, updating the data between the separate contexts, and transmitting updated data by the agent client across a computer network to a remote system. *See supra*, Section III.A.   The claims "recite more than a mere result.   Instead, they recite specific steps … that accomplish the desired result" of updating data between computer processes in separate contexts in a Mach-derived system. *Finjan*, 879 F.3d 1299 at 1305 (Fed. Cir. 2018). For example, claim 1 of the '502 Patent recites a specific method for transmitting data on a Mach-derived system, comprising creating a first context that incorporates an agent server, a second context that context incorporates an agent client, wherein the agent client and the agent server are executed but in separate processes on the system.   The claim further recites generating, by the agent server, data corresponding to an updated user instance, which corresponds input/output data such as image data, streaming data, keyboard data, or mouse data.   The agent server determines that a portion of the user data has been updated, and transfers the data to the agent client via a system communication facility, which may comprise a socket, a file, a port, or a pipe.   The transferring comprises least one of the user data, or metadata corresponding to a shared memory comprising the updated data.   Finally, the claim recites transmitting from the agent client user data or metadata over a network to a remote system for update of the user instance based on the data. *See* '502 Patent, col. 7, line 41 – col. 8, line 16.   The other claims of the Patents-in Suit cover similar embodiments of the unique Mach-derived system architecture. *See* '502 Patent, independent claims 1, 8, 25, 27, 36, 37 and 38; '386 Patent, independent claims,

1, 8, 25 and 27. The claims have "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *Ancora*, 908 F.3d at 1349 (Fed. Cir. 2018).

These dependent claims are directed to specific aspects of computer technology, including the system communication facility, the communications protocol or protocol translator, the storage media, the type of Mach-derived system or remote computer, the input and output facilities and rendering output, the communications network, shared memory, the agent client or agent server, and supporting a plurality of users and connections. *See supra*, Section III.A. These claims, for example, limit the claims to a terminal server environment, and even more specifically to the Mac operating system. *E.g.,* '502 Patent, claims 22-23. They also specify transmitting data over a network via a protocol translator. *See* '502 Patent, claims 5, 6, 20, 28, '386 Patent, claims 5-6, 20, 28. The protocol translator translates input and output data associated with the agent client into a protocol that can be used by the remote client, such as VNC, RDP or X11. '502 Patent, col. 4, line 64 – col. 5, line 3.

The claimed inventions also "solved [a] known technological problem in computers in a particular way," *Data Engine*, 906 F.3d at 1008 (Fed. Cir. 2018) – the problem of how to securely and synchronously update user data in Mach-derived systems in a timely manner. The inventor recognized that in prior art terminal server environments, implementing multiple independent instances of applications "leads to issues in being able to securely and synchronously update the graphical display of server output." '502 Patent, col. 2, lines 14-18. Simply transmitting the output from certain output agents, such as via window server, for example, "may lead to information being passed across user session boundaries, as the graphical data available would be that created by the most recent client session to access the application."

*Id.*, col. 2, lines 18-23.  Moreover, actions taken in one user context can affect one or more other user contexts.  *Id.*, col. 4, lines 5-7.  As a result, there was a need for an improved method for updating graphical display information securely and in a timely fashion in a terminal server environment, and for an improved means to transport data from a user's session in a terminal server environment, allowing improved communications with a remote device.  *Id.*, col. 2, lines 23-28.

The claims recite the solution: an agent client and agent server in separate processes in separate contexts of a Mach-derived system, updating the data between the separate contexts, and transmitting updated data by the agent client across a computer network to a remote system. They "recite[] precisely this technical solution and improvement" to Mach-derived systems. *Data Engine*, 906 F.3d. 1008.  The inventions thereby allowed for updating user interface information securely and in a timely fashion in a Mach-based terminal server environment, and for transporting data from a user's session in a terminal server environment, allowing improved communications with a remote device.  *See, e.g.*, '502 Patent, col. 2, lines 23-28.  This addressed "a technological problem with computers," *Ancora*, 908 F.3d at 1349 (Fed. Cir 2018), namely how to update user data securely and in a timely manner between contexts in a Mach-derived system.  *See, e.g.*, '502 Patent, col. 2, lines 23-28.

The Federal Circuit has repeatedly upheld software claims that are directed to specific improvements to computer technology, as the claims do here.  For example, in *Enfish*, the Federal Circuit held that the patent claims at issue were not directed to an abstract idea because the claimed self-referential tables improved the way that computers operated and handled data, by allowing the more efficient launching and adaptation of databases.  822 F.3d at 1333, 1336; *see BSG*, 899 F.3d at 1288 (noting that the self-referential table in *Enfish* "enabled programmers

14

to construct databases in new ways that required less modeling and configuring of various tables prior to launch"); *Finjan*, 879 F.3d at 1304-05 (describing *Enfish*).  Similarly, the claims here improved the way terminal server applications on Mach-derived systems operate and handle data, by allowing for more secure and timely transmission of data between Mach contexts.  *See, e.g.*, '502 Patent, col. 2, lines 23-28.

In *Finjan*, the Federal Circuit held that claims directed to a "behavior-based virus scan" were a specific improvement in computer functionality and hence not directed to an abstract idea. 879 F.3d at 1304. The claimed technique of scanning enabled "more flexible and nuanced virus filtering" and detection of potentially dangerous code.  *Id*.  The claims thus were directed to "a non-abstract improvement in computer functionality" having the benefit of achieving greater computer security. *Id*. at 1305.  The same is true of the claims here, which have the benefit of achieving greater security by avoiding "[s]imply transmitting the output from … [a] window server," which "may lead to information being passed across user session boundaries, as the graphical data available would be that created by the most recent client session to access the application." '502 Patent, col. 2, lines 18-23.[6]

Defendant overgeneralizes by contending that the claims are merely directed to "collecting and transmitting information over a computer network."   D.I. 72 at 12-13.  Characterizing the claims at such a high-level of abstraction is improper. *See Enfish*, 822 F.3d at 1337 ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."), *citing*

---

[6] *See also Data Engine Technologies LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018) (claims that provided "a specific solution to then-existing technological problems in computers and prior art electronic spreadsheets" are not directed to an abstract idea); *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) (a method for making websites easier to navigate on a small-screen device were not directed to an abstract idea).

*Alice*, 573 U.S. at 217 (courts must "tread carefully in construing this exclusionary principle [of laws of nature, natural phenomena, and abstract ideas] lest it swallow all of patent law."). When viewed in their entirety and in light of the specification, the claims are directed to specific improvements to Mach-derived computer technology. Lastly, Defendants' cited authority is inapposite. In *Electric Power Group, LLC v. Alstom*, the claims involved using a computer to aid in the fundamental economic practice of managing a power grid. 830 F.3d 1350, 1353 (Fed. Cir. 2016). Similarly, in *Intellectual Ventures I LLC v. AT&T Mobility II LLC*, the claims involved using a computer to assist with the economic activity of managing merchant accounts. 235 F. Supp. 3d 577 (D. Del. 2016). Neither case involved improvements to computer technology, as the claims do here.

### B.     The Claims Include Inventive Concepts Under *Alice* Step Two

Should the Court deem it necessary to proceed to *Alice* step two, the claims are patentable because they also include inventive concepts. In searching for an inventive concept, courts look at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." *Alice*, 134 S. Ct. at 2355; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299 at 1312 (Fed. Cir. 2016). This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their

16

combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

The claims do not involve performance of "well-understood, routine, and conventional activities" previously known to the industry.  Instead, they are directed to the "non-conventional and non-generic arrangement of" elements, including previously unknown-elements such as the agent server and agent client.  *See Bascom,* 827 F.3d at 1350 (Fed. Cir. 2016).  In particular, the claims recite an agent client and agent server, in separate processes in separate contexts of a Mach-derived system, and transmitting updated data by the agent client across a computer network to a remote system.  The claimed "agent client" and "agent server" are computer processes according to the claimed invention, and not generic or previously-known components.  *See, e.g.*, '502 Patent, col. 7, lines 47-48 ("the agent client and agent server are executed on the Mach-derived system, but in separate *processes*") (emphasis added), *see also* col. 4, lines 13-29.

Nor does the invention claim a known idea that is "simply applied to the Internet," but instead "overcomes existing problems" in the prior art.  *Bascom,* 827 F.3d at 1352 (Fed. Cir. 2016).  By keeping the agent server and agent client in separate contexts, functions associated with one user context can be isolated to reduce their impact on other existing user contexts, and the host operating system.  *Id*., col. 4, lines 2-5.  This prevented actions taken in one user context from affecting one or more other user contexts.  *Id*., col. 4, lines 6-9.  As the inventor explained during prosecution, "on a Mach platform a process does not have access to the user's session from outside the Mach context," whereas "[i]n a non-Mach operating system platform input devices and output devices typically interface in a lower part of the non-Mach operating system, such as in the kernel or a daemon that is started by the operating system on startup."  '502 Patent Prosecution History, May 27, 2014 Amendment (Hatch Decl., Ex. X.) at 21.  As a result of the

17

different levels in which I/O devices operate, implementing multiple independent instances of applications on Mach-derived systems leads "issues in being able to securely and synchronously update the graphical display of server output." '502 Patent, col. 2, lines 14-18.  These problems do not exist outside the context of a computer, and specifically Mach-derived systems.

The Complaint also includes "plausible and specific factual allegations that aspects of the claims are inventive." *Cellspin*, 927 F.3d at 1317.  "As long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why [an invention] is unconventional." *Id*.  Here, the claims include the inventive concepts, and the Complaint makes plausible and specific allegations that the claimed inventions solved problems associated with conventional prior art remote desktop applications.  Conventional applications exposed the user context directly to the network and therefore to malicious code accessing the user context.  *Id*. at ¶ 8.  They did not allow a second user to connect and start up a session with her own context.  *Id*.  They also did not allow a user to connect to a computer using her own credentials if another user was logged in on the host computer, even if that other user was not using the computer at the time.  *Id*.  Conventional solutions failed to allow a remote user session to run in the background on the host computer.  *Id*.  For example, if a user was controlling the user interface remotely, that user interface would also be displayed on the locally connected display of the host computer.  *Id*.  Conventional solutions required establishing, tearing down, and then reestablishing a connection with the remote computer, which required additional system resources and led to delays and connectivity issues.  *Id*.

The Complaint alleges that the claims recite a technical solution to a technical problem: a software architecture for transferring data in and out of separate Mach contexts and over a network to a remote computer to update the user interface and control the host computer

18

consisting of: (1) an agent client in one Mach context; and (2) at least one agent server in a separate Mach context, which is associated with the agent server in a way that allows data to be transferred between the two.  Complaint at ¶ 9.  This combination of components and steps, and each individual component or step itself, was unconventional because the conventional solutions used a single task in the user context, not two associated tasks in different contexts.  *Id.*

Because the claims include inventive concepts under *Alice* step two, the motion should be denied.

### C.      Factual and Claim Construction Disputes Preclude Judgment on the Pleadings

In view of the specific and plausible allegations in the Complaint described above, there are at the very least "issues of fact that preclude dismissal," as this Court recently held in denying a Section 101 motion to dismiss.  *See Encoditech LLC v. Qardio, Inc.*, 2019 U.S. Dist. LEXIS 102374 at * 11-12 (D. Del. 2019).

There are also unresolved claim construction disputes that preclude dismissal.  *See Aatrix Software v. Green Shades Software, Inc.*, 882 F.3d 1121 at 1129 (Fed. Cir. 2018) (vacating district court's dismissal under Rule 12(b)(6) on § 101 grounds, and directing the court to resolve claim construction issues); *Berkheimer*, 881 F.3d at 1370 (Fed. Cir. 2018).  Defendant contends that the agent server and agent client can be a "keyboard, video output, or mouse."  D.I. 72 at 7.  However, as described in the specification, the terms "KVM agent server" and "KVM agent client" refer to exemplary types of data (i.e. keyboard, video or mouse) that may be processed by the agent server and agent client processes.  *See* '502 Patent, col. 2, lines 40-42, col. 4, lines 13-21.  This dispute is relevant to whether the claim recites generic and conventional components.

The parties also dispute ten other claim terms, including the meaning of "Mach-derived"

itself.  D.I. 68.  These disputes are relevant at least to the scope of the claims, which affects both *Alice* steps one and two.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion for Judgment on the Pleadings.

Dated: September 20, 2019

Respectfully submitted,

By: /s/   *Stamatios Stamoulis*
Stamatios Stamoulis (DE Bar No. 4606)
Richard C. Weinblatt (DE Bar No. 5080)
STAMOULIS & WEINBLATT LLC
800 N West Street, Third Floor
Wilmington, DE 19801
Tel: (302) 999-1540
Stamoulis@swdelaw.com
Weinblatt@swdelaw.com

Ryan E. Hatch (*admitted Pro Hac Vice*)
Law Office of Ryan E. Hatch
13323 W. Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel. 310-279-5076
Fax. 310-693-5328
Email: ryan@ryanehatch.com

Attorneys for Plaintiffs,
*Aqua Connect, Inc., and Strategic Technology Partners, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of September, 2019, I caused a true and correct copy

of the foregoing to be served via email upon the following:

| | |
|---|---|
| Denise S. Kraft (DE Bar No. 2778)<br>Brian A. Biggs (DE Bar No. 5591)<br>Erin E. Larson (DE Bar No. 6616)<br>**DLA Piper LLP (US)**<br>1201 North Market Street, Suite 2100<br>Wilmington, DE 19801<br>denise.kraft@dlapiper.com<br>brian.biggs@dlapiper.com<br>erin.larson@dlapiper.com<br><br>Scott B. Czerwonka (DE Bar No. 4844)<br>4250 Lancaster Pike, Suite 200<br>Wilmington, DE 19805<br>sczerwonka@wlblaw.com | William L. Bartow (admitted *Pro Hac Vice*)<br>Darius C. Gambino (admitted *Pro Hac Vice*)<br>**DLA PIPER LLP (US)**<br>1650 Market Street, Suite 4900<br>Philadelphia, PA 19103<br>Darius.Gambino@dlapiper.com;<br>William.Bartow@dlapiper.com<br><br>Carrie L. Williamson (admitted Pro Hac Vice)<br>DLA Piper LLP (US)<br>2000 University Avenue<br>East Palo Alto, California 94303-2214<br>carrie.williamson@dlapiper.com |

By: */s/ Ryan E. Hatch*