IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AQUA CONNECT, INC. and STRATEGIC TECHNOLOGY PARTNERS, LLC<br><br>Plaintiffs,<br><br>v.<br><br>TEAMVIEWER US, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 18-1572 (MN)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM ORDER

At Wilmington this 28th day of January 2020:

IT IS HEREBY ORDERED that the claim term of U.S. Patent Nos. RE46,386 ("the '386 Patent") with an agreed-upon construction is construed as follows (*see* D.I. 96 at 3):

1. "undated" means "updated"

Further, as announced at the hearing on January 23, 2020, IT IS HEREBY ORDERED that the disputed claim terms of the '386 Patent and U.S. Patent No. 8,924,502 ("the '502 Patent") are construed as follows:

1. "Mach-derived" means "derived from an operating system kernel developed at Carnegie Mellon University (CMU) from 1985 to 1994" ('386 Patent, claims 1, 8, 10, 21, 22, 25, 27- 29, 31-35; '502 Patent, claims 1, 8, 21, 25, 27-29, 31-39)

2. "Mach context(s)" means "context(s) running on a Mach-derived operating system" ('386 Patent, claims 1, 8, 10, 21, 22, 25, 27- 29, 31-35; '502 Patent, claims 1, 8, 21, 25, 27-29, 31-39)

The parties briefed the issues (*see* D.I. 96) and submitted an appendix containing both intrinsic and extrinsic evidence (*see* D.I. 97; *see also* D.I. 60, 68 & 104).[1] Both sides provided a

---

[1] The Joint Claim Construction Brief contained a number of disputed terms for construction. (*See* D.I. 86 at ii-iv). After meeting and conferring in an attempt to narrow issues prior to the hearing in response to the Court's now-standard order (*see* D.I. 100), the parties reached

tutorial describing the relevant technology. (*See* D.I. 95 & 98). The Court carefully reviewed all submissions in connection with the parties' contentions regarding the disputed claim terms, heard oral argument (*see* D.I. 110) and applied the following legal standards in reaching its decision:

## I.   **LEGAL STANDARDS**

   A.   Claim Construction

"[T]he ultimate question of the proper construction of the patent [is] a question of law," although subsidiary fact-finding is sometimes necessary. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837-38 (2015). "[T]he words of a claim are generally given their ordinary and customary meaning [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (internal citations and quotation marks omitted). Although "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Id.* at 1314. "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted).

The patent specification "is always highly relevant to the claim construction analysis . . . [as] it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at

---

   agreement that only the "Mach" terms required construction (*see* D.I. 103; *see also* D.I. 104). Thus, the other terms that were briefed will have their plain and ordinary meanings.

1316. "Even when the specification describes only a single embodiment, [however,] the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence, . . . consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

In some cases, courts "will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318. Nonetheless, courts must not lose sight of the fact that "expert reports

and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, although extrinsic evidence "may be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

B.  Indefiniteness

Section 112 of the Patent Act requires a patent applicant to "particularly point out and distinctly claim the subject matter" regarded as the applicant's invention. 35 U.S.C. § 112 ¶ 2. "The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, *e.g.* competitors of the patent owner, can determine whether or not they infringe." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779-80 (Fed. Cir. 2002) (citing *Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17, 28-29 (1997)). Put another way, "[a] patent holder should know what he owns, and the public should know what he does not." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 731 (2002).

A patent claim is indefinite if, "viewed in light of the specification and prosecution history, [it fails to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). A claim may be indefinite if the patent does not convey with reasonable certainty how to measure a claimed feature. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015). But

4

"[i]f such an understanding of how to measure the claimed [feature] was within the scope of knowledge possessed by one of ordinary skill in the art, there is no requirement for the specification to identify a particular measurement technique." *Ethicon Endo–Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1319 (Fed. Cir. 2015).

Like claim construction, definiteness is a question of law, but the Court must sometimes render factual findings based on extrinsic evidence to resolve the ultimate issue of definiteness. *See, e.g.*, *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1376 (Fed. Cir. 2017); *see also Teva*, 135 S. Ct. at 842-43. "Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003); *see also Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008).

### I. THE COURT'S RULING

The Court's rulings regarding the disputed claim terms of the '386 Patent and the '502 Patent were announced from the bench at the conclusion of the hearing as follows:

> . . . At issue we have two patents, U.S. Patent Nos. RE46,386 and 8,924,502.[2] There were originally ten terms in dispute, but the parties narrowed their disputes to one term.[3] For that, as I stated earlier, I commend the parties and express my thanks for your efforts and your ability to compromise.
>
> I am prepared to rule on the remaining dispute before me. I will not be issuing a written opinion, but I will issue an order stating my ruling. I want to emphasize before I announce my decisions that while I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state. I have reviewed the '386 and the '502 Patents, as well as the '093 Patent from which the '386 Patent issued. I have reviewed the portions of the prosecution history submitted as well as the tutorials

---

2   The two patents share a specification.

3   The "one" remaining term consisted of several related terms grouped together: "Mach-derived" and "Mach context(s)."

5

submitted by the parties. There was full briefing on the disputed term[s]. There was an extensive appendix that included intrinsic and extrinsic evidence and there has been argument here today. All of that has been carefully considered.

Now as to my ruling. As an initial matter, I am not going to read into the record my understanding of claim construction law generally and indefiniteness. I have a legal standard section that I have included in earlier opinions, including in my recent order in *Waters Corporation v. Agilent Technologies, Inc.*, C.A. No. 18-1450. I incorporate that law and adopt it into my ruling today and will also set it in the order that I issue.

As to the person of skill in the art, neither party has asserted that there are any relevant differences in their proposed definitions of a person of ordinary skill that would be relevant to these proceedings.

Now to the disputed "Mach" terms, i.e., "Mach-derived," "Mach context" and "Mach contexts." These terms are found in claims 1, 8, 10, 21, 22, 25, 27 through 29, 31 through 35 of the '386 Patent and claims 1, 8, 21, 25, 27 through 29 and 31 through 39 of the '502 Patent.

Plaintiff proposes the construction "An operating system kernel developed at Carnegie Mellon University (CMU) from 1985 to 1994." Defendants assert that the term[s are] indefinite pursuant to 35 U.S.C. § 112(2) but state that, to the extent I construe "Mach-derived," it means "a Mac OS X operating system," and to the extent I construe "Mach context," it means "a context on a computer running a Mac OS X operating system."

I will construe "Mach-derived" to mean "derived from an operating system kernel developed at Carnegie Mellon University (CMU) from 1985 to 1994." And "Mach context" to mean "a context running on a Mach-derived operating system." To be clear, this does not include Windows-based systems, which the patentee disclaimed during prosecution.[4]

That construction finds support in the prosecution history where in a declaration of the inventor, Mr. Cohen, the applicant defined the term "Mach" in the same way he is doing now.

---

4 DOS and Unix-based systems are also excluded from the scope of the claims, as those were disclaimed during prosecution as well. (*See* D.I. 97, Ex. F at JA1422).

I will not construe the "Mach" terms to be limited to a Mac OS X operating system. During prosecution, the patentee made clear that the term[s were] not so limited. In the response to the Notice of Allowance, the patentee specified that he had not meant to limit the term[s] to Mac OS X. Defendants have not cited anything to suggest that I disregard those statements.

As to indefiniteness, for a claim to be held invalid for indefiniteness, there must be clear and convincing evidence. That's *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 912 n.10 (citing *Microsoft Corp. v. i4i Ltd. Partnership*, 564 U.S. 91, 95 (2011)). Here, I have mostly attorney argument on both sides and a declaration of the inventor. I have construed the term[s] as advocated by Plaintiff, but I cannot reach a final conclusion on indefiniteness on the record before me. I find that on this record Defendant has not met its burden to show by clear and convincing evidence that the "Mach" terms are indefinite. But to the extent appropriate, Defendant may raise the issue later after full fact and expert discovery. At that point I would expect to receive more fulsome discussion and explanation of the issue, as well as ample evidence to support attorney argument.

_____
The Honorable Maryellen Noreika
United States District Judge