IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AQUA CONNECT, INC. and STRATEGIC TECHNOLOGY PARTNERS, LLC,<br><br>      Plaintiffs,<br><br>      v.<br><br>TEAMVIEWER US, LLC,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>) C.A. No. 18-1572 (MN)<br>)<br>)<br>)<br>) |

## MEMORANDUM ORDER

At Wilmington this 16th day of September 2020:

As announced at the hearing on August 20, 2020, IT IS HEREBY ORDERED that Defendant TeamViewer US, LLC ("TeamViewer") Motion for Judgment on the Pleadings (D.I. 71) is DENIED.

TeamViewer moved for entry of judgment on the pleadings on the operative complaint in C.A. No. 18-1572 pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, alleging that the claims of U.S. Patent Nos. RE46,386 ("the '386 Patent") and 8,924,502 ("the '502 Patent") are invalid as claiming ineligible subject matter under 35 U.S.C. § 101. TeamViewer's motion was fully briefed as of September 27, 2019, (*see* D.I. 72, 81, 86), and the Court received further submissions regarding which Supreme Court or Federal Circuit case each party contends is analogous to the claims at issue in Defendant's motion as related to the § 101 arguments, (*see* D.I. 138, 139).[1]

---

[1] In addition, Plaintiff submitted a Notice of Supplemental Authority, (D.I. 116), and Defendant, at the Court's order, (D.I. 142), submitted a letter to specify which claims it is challenging and where those claims are addressed in their briefing, (D.I. 143).

The Court carefully reviewed all submissions in connection with Defendant's motion, heard oral argument (D.I. 146) and applied the following legal standard in reaching its decision:

## I. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." In ruling on a Rule 12(c) motion, the Court must accept as true all well-pleaded allegations in the non-movant's pleadings and draw all reasonable inferences in favor of the non-movant. *See Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017); *see also Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *3G Licensing, S.A. v. Blackberry Ltd.*, 302 F. Supp. 3d 640, 648 (D. Del. 2018). Judgment under Rule 12(c) is only appropriate where "the movant clearly establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221. "Patent eligibility can be determined on the pleadings under Rule 12(c) when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018).

### B. Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101: laws of nature, physical phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These three exceptions "are 'the basic tools of scientific and

technological work' that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 573 U.S. at 216.  A claim to any one of these three categories is directed to ineligible subject matter under § 101.  "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78.  First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts.  *Alice*, 573 U.S. at 217.  If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step."  *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).  If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

        1.     Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject

matter). In addressing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature. *Alice*, 573 U.S. at 217; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

2. Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." *Alice*, 573 U.S. at 218; *see also McRO*, 837 F.3d at 1312. This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (citation and quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions


applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish*, 822 F.3d at 1334.

## I. THE COURT'S RULING

The ruling to deny Defendant's motion under Rule 12(c) was announced from the bench at the conclusion of the hearing as follows:

> . . . thank you for the arguments today. I found them to be helpful. I am prepared to rule on the pending motion[]. I will not be issuing a written opinion, but I will issue an order stating my rulings. As I have done in other cases, before I get to the rulings, I want to emphasize that although I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state. There was briefing on the pending motion[], there were additional submissions, including those discussing what each party viewed as the most analogous case, and there has been oral argument here today. All of the submissions and the arguments have been carefully considered.
>
> Now, as to my ruling. I am not going to read into the record my understanding of Section 101 law or the applicable pleading standards. I have a legal standard section that I have included in earlier opinions, including in *Innovative Global Systems, LLC v. Keep Truckin, Inc.*, No. 19-641. I incorporate that law and adopt it into my ruling today, and I will also set it out in the order that I issue.
>
> First, we have the *Aqua Connect* case. There are two patents, U.S. Reissued Patent No. RE46,386 and U.S. Patent No. 8,924,502, which generally relate to methods and systems for updating user data between computer processes in separate contexts in Mach-derived systems. The two patents have a combined 77 claims with multiple independent and dependent claims.
>
> Defendant has moved for judgment on the pleadings pursuant to Rule 12(c), arguing that the asserted claims are directed to patent-ineligible subject matter. After reviewing the entire record, hearing argument, and applying the law as I understand it, I am going to deny the motion.
>
> First, I want to address representativeness of the claims discussed. In Defendant's brief, it never used the term

"representative" to describe any claim. It stated in a footnote that "[f]or purposes of this Motion, Claim 1 of the '386 Patent and Claim 1 of the '502 Patent are considered exemplary." [(D.I. 72 at 1 n.1).] In a supplemental submission requested by the Court, Defendant stated that referring to those claims as "exemplary" meant that each is representative of the other independent and dependent claims in the two patents. [(D.I. 143).] Defendant did not, however, attempt to make any showing as to how those claims were actually representative. Instead it quotes from the other claims and offers in rather conclusory fashion that those other claims "recite similar conventional concepts and elements" and that nothing in those claims serves to convert the concepts recited in them to anything other or significantly more than abstract ideas. [(*See e.g.*, (D.I. 72 at 11-12, 15-16); *accord* (D.I. 143)).] Typically, that would not suffice.

Plaintiffs, however, today agreed that claim 1 of the '386 Patent is representative of the other claims of that patent, and that claim 1 of the '502 Patent is representative of the other claims of that patent. So, because there is agreement by the parties as to the representativeness of the claims discussed and because nothing I have seen or heard suggests those claims are not representative, I will accept that those claims are representative of the other claims of those respective patents.

[Claim 1 of the '386 Patent claims:

1. A computer-implemented method for updating a user instance, the method comprising:

   creating at least one user computer context configured to be executed on a Mach-derived computing device comprising at least one computer processor, wherein each of the at least one user computer context is configured to incorporate an agent server;

   associating the agent server with an agent client, wherein the agent client and the agent server are configured to be executed on the Mach-derived computing device, but in separate processes and in separate Mach contexts;

   generating, by the agent server, data corresponding to an updated user instance,

      wherein the data corresponding to the undated user instance comprises user computer data, wherein the user computer data comprises at least one of:

         display data, audio data, biometric data, input data, image data, output data, video data, streaming data, touch screen

        data, keypad data, joystick data, touchpad data, keyboard data, mouse data, metadata, smart device data, input device data, data from another device appropriate for receiving input directly or indirectly from the user, computer monitor data, speaker data, projector data, data from another device appropriate for outputting data, or output device data;

determining, by the agent server, that any portion of the user computer data has been updated;

transferring the data corresponding to the updated user instance between the agent server and the agent client via a computer system communication facility based on said determining,

    wherein said transferring comprises:

      transferring at least one of:

        the user computer data, or

        metadata corresponding to a shared memory wherein said shared memory comprises the any portion of the updated user computer data,

      between the agent server and the agent client, wherein at least one of the user computer data or the metadata is transmitted via the computer system communication facility,

      wherein the computer system communication facility comprises at least one of:

        a socket,

        a file,

        a port,

        a shared computer memory, or

        a pipe; and

transmitting the data corresponding to the updated user instance over a communications network to a remote computer system for update of the user instance based on the data corresponding to the updated user instance,

    wherein said transmitting comprises:

      transmitting at least of the user computer data, or the metadata, over the communications network to the remote computer system

for update of the user instance based on the updated user computer data or metadata.

Claim 1 of the '502 Patent claims:

1. A method for transmitting data, the method comprising:

　creating a first context on a Mach-derived system comprising at least one processor, wherein the first context incorporates an agent server;

　creating a second context on the Mach-derived system, wherein the second context incorporates an agent client;

　wherein the agent client and the agent server are executed on the Mach-derived system, but in separate processes;

　generating, by the agent server, the data corresponding to an updated user instance,

　wherein the data corresponding to the updated user instance comprises user data,

　wherein the user data comprises at least one of: display data, audio data, biometric data, input data, image data, output data, video data, streaming data, touch screen data, keypad data, joystick data, touchpad data, key board data, mouse data, metadata, smart device data, input device data, data from another device appropriate for receiving input directly or indirectly from the user, computer monitor data, speaker data, projector data, data from another device appropriate for outputting data, or output device data;

　determining, by the agent server, that any portion of the user data has been updated;

　transferring the data to or from the agent client via a system communication facility based on said determining,

　　wherein said transferring comprises:

　　　transferring at least one of: the user data, or metadata corresponding to a shared memory comprising the any portion of the updated user data,

　　　between the agent server and the agent client,

　　　wherein at least one of the user data or the metadata is transmitted via the system communication facility,

　　　wherein the system communication facility comprises at least one of a socket, a file, a port, or a pipe; and

　transmitting from the agent client the data over a network to a remote system for update of the user instance based on the data,

　　wherein said transmitting comprises: transmitting at least one of the user data, or the metadata, over the network to

8

> the remote system for update of the user instance based on the updated user data or metadata.]

Next, I turn to Step 1 of *Alice*. Defendant argues that the claims of both patents are directed to the abstract idea of transmitting data between computers. [(*E.g.*, D.I. 72 at 1).]

Defendant argues that the claims are like those found invalid in *Interval Licensing LLC v. AOL, Inc.*, [896 F.3d 1335 (Fed. Cir. 2018),] which were directed to an "attention manager" that coordinates the display of acquired content. [(*See* D.I. 139).] The Federal Circuit held that the claims were directed to the abstract idea of the presentation of two sets of information, in a non-overlapping way, on a display screen. [*Interval Licensing LLC*, 896 F.3d at 1338.]

Plaintiffs argue that the '386 and '502 Patents are not directed to an abstract idea but instead to an improvement in computer technology that solved the problem of how to securely and synchronously update user data in Mach-derived systems in a timely manner. [(*E.g.*, D.I. 81 at 1).]

I agree with Plaintiffs that claim 1 of the '386 Patent and claim 1 of the '502 Patent are not directed to the abstract idea of transmitting data between computers. And, because the parties all agree that claim 1 of each patent is representative of the other claims in the respective patents, this conclusion applies to all claims.

Despite Defendant's arguments to the contrary, the claims are not like those in *Interval Licensing LLC*. The focus of the claims in that case was the "attention manager," which was, in essence, a "system" for producing a result. In my view, Defendant here has oversimplified the claims of the '386 and '502 Patents and characterized them at an improperly high level of abstraction, in contravention of the Federal Circuit's instruction in *McRO* and *Enfish*. [*See McRO*, 837 F.3d at 1313; *Enfish*, 822 F.3d at 1337.]

Here, the focus of both claim 1 of the '386 Patent and claim 1 of the '502 Patent is a method for updating user data between computer processes in separate contexts in Mach-derived systems. The claims recite the agent client and agent server in separate processes in separate contexts of a Mach-derived system, updating the data between the contexts, and transmitting updated data by the agent client across a computer network to a remote system. The claims "recite more than a mere result. . . . [T]hey recite specific steps . . . that accomplish the desired result" of updating data

between computer processes in separate contexts in a Mach-derived system in a synchronous and secure manner. [*See Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018).] That is not an abstract idea.

And, because I find that the '386 Patent and the '502 Patent claims are not directed to an abstract idea, I do not reach Step 2 of the *Alice*/*Mayo* inquiry. For that proposition I cite to *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, [880 F.3d 1356, 1363 (Fed. Cir. 2018),] and I will thus deny Defendant's motion.

                                                                                           */s/ Maryellen Noreika*
                                                                                           The Honorable Maryellen Noreika
                                                                                           United States District Judge