

**DLA Piper LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801-1147
www.dlapiper.com

April 18, 2022
*VIA CM/ECF*

**PUBLIC VERSION OF D.I. 210**

**FILED: APRIL 25, 2022**

The Honorable Maryellen Noreika
J. Caleb Boggs Federal Building
844 N. King Street
Unit 19, Room 4324
Wilmington, DE 19801-3555

Re:   *Aqua Connect, Inc., et. al. v. TeamViewer US, LLC, et al.,* C.A. No. 1:18-cv-01572-MN

Dear Judge Noreika:

Pursuant to Defendants' April 12, 2022 request to file a motion to strike, TeamViewer hereby asks the Court to strike Paragraph 18 of Plaintiff's expert Dr. Shamos's Reply Expert Report Concerning Infringement ("Shamos Reply Report" or "Shamos III").  Dr. Shamos's testimony establishes that both Shamos and Plaintiff had an exhibit called the Kernel Programming Guide as early as 2020, and that Shamos knew about and has been aware of another exhibit called the "Lévénez timeline" in the course of his work at Carnegie Mellon University.  Shamos and Plaintiff rely heavily on these exhibits for infringement, but hid both documents from Teamviewer. They were never produced in discovery, not included in contentions, and not identified or relied on in the opening Expert Report on Infringement ("Shamos I").  Only in the final reply expert report on infringement ("Shamos III") were they revealed as alleged evidence of infringement. Plaintiff and Shamos should not be permitted to rely on them at summary judgment or trial.

**I.   Plaintiff and Shamos Rely on the Apple Developer Guide and Lévénez as Key Underpinnings to their Infringement Case.**

In ¶ 18 of his Reply Report, Shamos relies on Apple's "Kernel Programming Guide" to articulate an infringement theory for "Mach-derived."  Ex. 1 (Shamos III) ¶ 18.  In the same paragraph, Shamos also relies on the Lévénez timeline.  *Id.*  He cites both to support his argument that "iOS is Mach-derived." *Id.*  Shamos readily admits that "in my infringement analysis of course I say that the accused systems have Mach-derived versions and it's the Mach-derived versions that are accused.  Now, how do I come to the opinion that they're Mach-derived?  One, Apple [Developer Guide] says they are.  Two, Lévénez says they are. …" Ex. 2 (Shamos Rough Tr. ("Dep. Tr.")) at 115:8-116:7.

**II.   Apple Developer Guide and the Lévénez Timeline Were Known to Plaintiff But Improperly Withheld as Infringement Evidence until the End of Expert Discovery.**

Plaintiff has known of this evidence throughout the case.  Plaintiff retained Shamos in about June 2020. Ex. 2 (Dep. Tr.) at 8:2-10.  Shamos and Plaintiff admit to having the Kernel Programming Guide in 2020.  *Id.* at 17:18-22.  Shamos was aware of the Kernel Programming Guide before drafting his Opening Report on Infringement.  *Id.* at 18:9-19:12.  Shamos was aware

April 18, 2022
Page Two

of the Lévénez timeline before drafting his expert reports. Shamos even labels the Lévénez timeline an "often-cited" source in his Rebuttal Expert Report Concerning Invalidity ("Shamos II"). *Id.* at 14:11-15:2; Ex. 3 (Shamos II) ¶ 122.

But Plaintiff never produced the Apple Developer Guide nor the Lévénez timeline in discovery. Despite its heavy reliance on these exhibits to prove infringement, Plaintiff failed to identify either exhibit in its Initial or even Final Infringement Contentions. Shamos, who knew of the exhibits, prepared the final contentions. Ex. 2 (Dep. Tr.) at 9:13-21. Even after expert discovery started, Plaintiff and Shamos failed to cite or refer to them in Shamos's 48-page expert report or any of his hundreds of pages of claim charts. The two exhibits were disclosed for the first time in Shamos II, a rebuttal report about patent <u>validity</u>. *See* Ex. 3 (Shamos II) ¶¶ 71-72, 122-26, Exhibits C, D, and E. Shamos referred to the Apple Developer Guide in a section of the report titled "Validity Analysis of the '386 Patent Claims" and to the Lévénez timeline in a section titled "There is no Indefiniteness." Shamos II did not discuss infringement.

Plaintiff finally revealed the reliance on these two exhibits for their infringement case in Paragraph 18 of Shamos III, in the last hour of the last day of expert reports. That is the only disclosure anywhere in the case that Plaintiff intended to rely on the Apple Developer Guide or the Lévénez timeline to prove infringement.

**III. Plaintiff Offers No Excuse for its Late Disclosure.**

Plaintiff bears the burden of proof and the burden of persuasion on the issue of infringement. Plaintiff must prove infringement of every limitation of every asserted claim, and provide evidence to do so. The Court's schedule required Plaintiff to disclose its final infringement contentions, including any evidence upon which it will rely to prove infringement, and then to provide opening reports consistent with those contentions. But Plaintiff has provided no basis for its failure to disclose the exhibits earlier or cite them in Shamos I. Plaintiff also failed to provide any explanation or excuse for the late disclosure in the parties' meet-and-confer.

The expert report is no place to "flesh[] out" infringement contentions, nor should expert reports for the first time be giving what "specific aspects" of the accused product meet a claim element. *Finjan, Inc v. Rapid7, Inc*, No. 18-1519-MN, 2020 WL 5798545, at *1 (D. Del. Sept. 29, 2020) (granting-in-part motion to strike portions of an expert report). But that is exactly what Plaintiff did here. As in *Finjan*, Plaintiff sandbagged, withholding evidence in discovery and from the contentions, and even the opening expert reports, hiding its key evidence on infringement and citing to two new, detailed exhibits for the first time in its reply expert report on infringement.

**IV. Plaintiff's Late Disclosure Fails the Third Circuit's *Pennypack* Factors**

To determine whether a failure to disclose is harmless, courts in the Third Circuit consider the "*Pennypack*" factors, discussed below. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710,

April 18, 2022
Page Three

719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)).  In "sophisticated, complex litigation involving parties represented by competent counsel," courts have "been less indulgent" in applying the *Pennypack* factors and "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co. v. Acushnet Co.*, No. 5-132-JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007).

All five *Pennypack* factors support striking ¶ 18 of Shamos III.  The first factor, prejudice or surprise to TeamViewer, supports exclusion. TeamViewer had no opportunity for its expert Dr. Benjamin Goldberg to reply to Plaintiff's new infringement theory and evidence as to "Mach-derived."  The infringement evidence was disclosed for the first time in Plaintiff's *final* reply expert infringement report.  The exhibits should have been disclosed before claim construction, for consideration with the "Mach-derived" term, or at least in its final contentions or opening report.  Plaintiff sandbagged TeamViewer.

The second factor, importance of the information withheld, supports exclusion.  Plaintiff did not disclose this evidence until its reply report, so this cannot be mission-critical evidence.  *Finjan, Inc*, 2020 WL 5798545, at *3 (finding this factor favored exclusion where plaintiff would not be left "without an infringement case").  Indeed, Shamos suggested he did not cite Lévénez in his opening report because it "was a simple proposition." Ex. 2 (Dep. Tr.) at 116:8-14.  On the contrary, since the "Mach-derived" claim element is present in every asserted claim and contested (including at claim construction), allowing Plaintiff to shift the sands at this late stage would result in tremendous prejudice to TeamViewer, outweighing any importance to Plaintiff and Shamos.

The third and fourth factors, possibility of curing the prejudice and potential disruption of an orderly and efficient trial, support exclusion.  The only way to cure the prejudice would be to reopen discovery related to the exhibits, reopen contentions, potentially reopen claim construction, and then reopen expert discovery.  Plaintiff flouted the case schedule, preventing any possible cure of the prejudice.  *See Finjan, Inc*, 2020 WL 5798545, at *3.

As for the fifth factor, bad faith or willfulness, Teamviewer is reluctant to imply motive without an opportunity to depose Plaintiff or its attorneys who failed to disclose the evidence.  But it is beyond dispute that Shamos knew of this evidence in 2020, and that Plaintiff repeatedly failed to disclose the references or its heavy reliance on them.  That Plaintiff has failed to provide any explanation for this first disclosure in the reply expert reports, coupled with Shamos's heavy emphasis on that evidence at his deposition, supports exclusion.

TeamViewer respectfully requests that the Court grant its motion and strike Paragraph 18 of Shamos's Reply Expert Report Concerning Infringement ("Shamos III").

April 18, 2022
Page Four

Respectfully submitted,

/s/ *Brian A. Biggs*

Brian A. Biggs (DE Bar No. 5591)
*Counsel for Defendants TeamViewer US, Inc*
*and TeamViewer Germany GmbH*

cc: Delaware Counsel of Record (via CM/ECF)
    All Counsel of Record (via CM/ECF)