## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AQUA CONNECT, INC. a Nevada corporation, and STRATEGIC TECHNOLOGY PARTNERS, LLC, a Nevada limited liability company, | |
| Plaintiffs, | C.A. No.  18-01572-MN |
| v. | **LEAD CASE** |
| TEAMVIEWER US, INC., | **FILED UNDER SEAL** |
| Defendant. | |
| AQUA CONNECT, INC., a Nevada corporation, and STRATEGIC TECHNOLOGY PARTNERS, LLC, a Nevada limited liability company, | |
| Plaintiffs, | C.A. No.  19-2286-MN |
| v. | |
| TEAMVIEWER GERMANY GMBH, | |
| Defendant. | |

## [PROPOSED] FINAL JOINT PRETRIAL ORDER

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.  In accordance with Del. L.R. 16.3 and this Court's Scheduling Order (D.I. 23) the parties have submitted a proposed Joint Pretrial Order.

Dated: July 25, 2022

**STAMOULIS & WEINBLATT LLC**

*/s/ Richard C. Weinblatt*
Stamatios Stamoulis (DE Bar No. 4606)
Richard C. Weinblatt (DE Bar No. 5080)
800 N. West Street, Third Floor
Wilmington, DE 19809
Tel: (302) 999-1540
stamoulis@swdelaw.com

**DLA PIPER LLP (US)**

*/s/ Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)
Erin E. Larson (DE Bar No. 6616)
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Tel: (302) 468-5700
brian.biggs@dlapiper.com

weinblatt@swdelaw.com

**OF COUNSEL:**

Ryan E. Hatch (admitted *pro hac vice*)
**HATCH LAW, PC**
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: 310-279-5076
ryan@hatchlaw.com

Lawrence M. Hadley (admitted *pro hac vice*)
Stephen Underwood (admitted *pro hac vice*)
**GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP**
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel: 310.553.3000
lhadley@glaserweil.com
sunderwood@glaserweil.com

*Attorneys for Plaintiff Aqua Connect, Inc.,
and Strategic Technology Partners, LLC*

erin.larson@dlapiper.com

**OF COUNSEL:**

Michael Jay (admitted *Pro Hac Vice*)
**DLA Piper LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Telephone: (310) 595-3000
Facsimile: (310) 595-3300
michael.jay@us.dlapiper.com

Paul Steadman (admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: (312) 368-2135
Facsimile: (312) 251-2850
paul.steadman@us.dlapiper.com

William L. Bartow (admitted *Pro Hac Vice*)
**DLA Piper LLP (US)**
1650 Market Street, Suite 4900
Philadelphia, PA 19103
Telephone: (215) 665-3300
william.bartow@us.dlapiper.com

Gianni Minutoli (admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
11911 Freedom Dr., Suite 300
Reston, BA 20190
Telephone: (703) 773-4045
Facsimile: (703) 773-5019
gianni.minutoli@us.dlapiper.com

Benjamin Mueller (admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: (312) 368-4008
benjamin.mueller@us.dlapiper.com

*Attorneys for Defendants TeamViewer US,
Inc. and TeamViewer Germany GmbH*

ii

## TABLE OF CONTENTS

**Page**

I.     NATURE OF THE CASE ................................................................................................1

II.    STATEMENT OF JURISDICTION...............................................................................4

III.   FACTS .........................................................................................................................4

      A.    Statement of Uncontested Facts.......................................................................4

      B.    Statement of Contested Facts............................................................................4

IV.   ISSUES OF LAW .........................................................................................................5

V.    EXHIBITS ....................................................................................................................5

      A.    Demonstrative Exhibits.....................................................................................7

VI.   WITNESS LISTS AND DEPOSITION DESIGNATIONS ...........................................9

      A.    Witness Lists .....................................................................................................9

      B.    Deposition Designations and Objections ........................................................11

VII.  AQUA CONNECT'S STATEMENT OF INTENDED PROOF INCLUDING DETAIL ON DAMAGES CLAIM................................................................................14

VIII. TEAMVIEWER'S STATEMENT INTENDED PROOF OF DEFENSES AND COUNTERCLAIMS....................................................................................................15

IX.   AMENDMENTS TO THE PLEADINGS ...................................................................19

X.    SETTLEMENT CERTIFICATION..............................................................................19

XI.   OTHER MATTERS.....................................................................................................20

      A.    Trial Presentation and Time Limits ................................................................20

      B.    Motions In Limine ...........................................................................................21

      C.    Voir Dire, Jury Instructions, and Verdict Form..............................................21

      D.    Jurors and Jury Procedures ..............................................................................21

      E.    Objections to Expert Testimony ......................................................................22

      F.    Set-up of Electronic Equipment......................................................................22

      G.    Other Stipulations ...........................................................................................22

      H.    Objections to Late Disclosure of Witnesses ...................................................23

## I.     NATURE OF THE CASE

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 et seq.  Plaintiffs are Aqua Connect, Inc. and Strategic Technology Partners, LLC (collectively, "Aqua Connect" or "Plaintiffs").  Defendants are TeamViewer US, LLC and TeamViewer Germany GMBH (collectively, "TeamViewer" or "Defendants").  Aqua Connect contends that TeamViewer infringes U.S. Patent No. RE46,386, entitled "Updating a user session in a Mach-derived computer system environment" (the "'386 patent") and U.S. Patent No. 8,924,502, entitled "System, method and computer program product for updating a user session in a Mach-derived system environment" (the "'502 patent").  Aqua Connect has narrowed the claims at issue for trial to the following:  Claims 25 and 27 of the '502 patent and claims 25 and 27 of the '386 patent.

2.      Aqua Connect initiated this action on October 11, 2018 with a Complaint for Patent Infringement against TeamViewer US, LLC.  (D.I. 1, Case No. 18-01572-MN).  In the complaint, Aqua Connect alleged that TeamViewer infringes the patents-in-suit directly and indirectly.  Aqua Connect further contends that TeamViewer's infringement is willful.  Aqua Connect seeks damages in the form of a reasonable royalty, enhanced damages for willful infringement, attorneys' fees, prejudgment interest, and a permanent injunction.

3.      On June 28, 2019, Aqua Connect filed a Complaint for Patent Infringement against SHI International Corporation and TeamViewer GmbH ("TeamViewer Germany) in the U.S. District Court for the Central District of California, Civil Action No. 2:19-cv-05662.  The complaint alleged that TeamViewer Germany infringed the patents-in-suit and made the same infringement allegations and claimed the same relief as its action against TeamViewer U.S.

4.      On December 16, 2019, the Central District of California dismissed the complaint against SHI International Corporation without prejudice and transferred the TeamViewer Germany action to the District of Delaware.  Subsequently, Aqua Connect's action against TeamViewer Germany was consolidated in this Court with the action against TeamViewer U.S., and the Court assigned Case No. 18-01572-MN as the lead case.

5.      TeamViewer denies infringement and asserts that the asserted patent claims are not infringed and invalid.

6.      The pleadings in which these issues are raised are as follows:

    a.      Complaint for patent infringement against TeamViewer US, LLC (D.I. 1).

    b.      Answer to Complaint and Counterclaim against Aqua Connect, Inc., Strategic Technology Partners, LLC by TeamViewer US, LLC. (D.I. 16).

    c.      Answer to Answer to Complaint, Counterclaim by Aqua Connect, Inc. (D.I. 17).

    d.      Complaint filed by Plaintiffs Aqua Connect, Inc., Strategic Technology Partners, LLC (D.I. 1, Civil Action No. 2:19-cv-5662 (C.D. Cal.)).

    e.      First Amended Complaint against Defendants SHI International Corp., TeamViewer Gmbh filed by Plaintiffs Aqua Connect, Inc., Strategic Technology Partners, LLC (D.I. 9, Civil Action No. 2:19-cv-5662 (C.D. Cal.)), transferred and re-assigned as Civil Action No. 19-2286 (D. Del).

    f.      Order Regarding Consolidation of Civil Action No. 19-2286 (D. Del.) with Case No. 18-1572 (D. Del).

    g.      Answer to Complaint by TeamViewer GmbH (D.I. 111).

7.      The following motion is fully briefed and remains pending:  TeamViewer's *Daubert* Motion to Exclude Testimony (D.I. 227).

8.      This Court has construed the following claim terms:

    a.      "Mach-derived" means "derived from an operating system kernel developed at Carnegie Mellon University (CMU) from 1985 to 1994." ('386 Patent, claims 1, 8, 10, 21, 22, 25, 27- 29, 31-35; '502 Patent, claims 1, 8, 21, 25, 27-29, 31-39).  (D.I. 113 at 1).  In its Memorandum Order, the Court further stated: "To be clear, this does not include Windows-based systems, which the patentee disclaimed during prosecution."  "DOS and Unix-based systems are also excluded from the scope of the claims, as

those were disclaimed during prosecution as well."  (D.I. 113 at 4 and n.4).  The parties dispute whether this further statement is part of the Court's claim construction.  Aqua Connect requests clarification that the Court's statement does not exclude from the claim term Unix-based operating systems that are Mach-derived..  Aqua Connect agrees that Windows, DOS and Unix-based systems that are not Mach-derived are excluded from the scope of the claims.  TeamViewer position is that Aqua Connect's request is improper.  The Court's construction, which includes the statement recited above, is clear.  Aqua Connect received the construction of "Mach-derived" that it sought during claim construction.  But as the case has proceeded, Aqua Connect and its expert have ignored that construction and taken a position on "Mach-derived" that is much different than the Court's construction.  This is the subject of one of TeamViewer's motion *in limine*.  So to salvage its expert's opinions, Aqua Connect is now belatedly asking that the Court redo its claim construction of this term.

    b.    "Mach context(s)" means "context(s) running on a Mach-derived operating system" ('386 Patent, claims 1, 8, 10, 21, 22, 25, 27- 29, 31-35; '502 Patent, claims 1, 8, 21, 25, 27-29, 31-39).  (D.I. 113 at 1).

    c.    "undated" means "updated" ('386 Patent, claims 1, 8).  (D.I. 113 at 1).

9.    TeamViewer denies Aqua Connect's allegations of infringement, alleges the asserted claims of the '386 and '502 patents are invalid, and alleges that Aqua Connect's rights in the asserted patents are exhausted with respect to the accused products.

## II.     STATEMENT OF JURISDICTION

10.     This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has federal question subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, 2202, the patent laws of the United States, including 35 U.S.C. § 271 et seq.  This Court has subject matter jurisdiction over TeamViewer's counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, and 2201.

12.     The parties agree that the Court has personal jurisdiction over all parties.  The Court has personal jurisdiction over Plaintiffs, who filed in this District.  The Court also has personal jurisdiction over the Defendants because, among other reasons, Defendants have litigated this case on the merits in this District, and thereby waive any defense of lack of personal jurisdiction.  Personal jurisdiction is not disputed.

13.     Venue is proper in the District of Delaware pursuant to 28 U.S.C. pursuant to 28 U.S.C. §§ 1391, 1400(b).  Venue is not disputed.

14.     Standing is not disputed.

## III.    FACTS

### A.     <u>Statement of Uncontested Facts</u>

15.     A joint statement of facts that are admitted and require no proof is set forth in **Exhibit 1**.

### B.     <u>Statement of Contested Facts</u>

16.     Plaintiffs' statement of the issues of fact, with a brief statement of what Plaintiff intends to prove, is attached as **Exhibit 2**.

17.     Defendants' statement of the issues of fact, with a brief statement of what Defendants intend to prove, is attached as **Exhibit 3**.

18.     If this Court determines that any issue identified in a party's statement of fact is more properly an issue of law, such statement shall be considered to be part of the party's statement of law.

## IV.    ISSUES OF LAW

19.     Plaintiffs' statement of the open issues of law to be decided at trial is attached as **Exhibit 4**.

20.     Defendants' statement of the open issues of law to be decided at trial is attached as **Exhibit 5**.

21.     If this Court determines that any issue identified in a party's statement of law is more properly an issue of fact, such statement shall be considered to be part of the party's statement of fact.

## V.     EXHIBITS

22.     The parties' joint exhibit list and objections thereto is attached as **Exhibit 6**. Agreed exhibits will be numbered beginning at JTX001.

23.     Aqua Connect's list of trial exhibits and objections thereto is attached as **Exhibit 7**. Aqua Connect's trial exhibits will be identified with PTX numbers, starting with PTX301. Aqua Connect's demonstrative exhibits will be identified with PDX numbers, starting at PDX1. TeamViewer's list of trial exhibits and objections thereto is attached as **Exhibit 8**. TeamViewer's trial exhibits will be identified with DTX numbers, starting with DTX601. TeamViewer's demonstrative exhibits will be identified with DDX numbers, starting with DDX1.

24.     A party will provide exhibits to be used in connection with direct examination by 6:00 p.m. Eastern Time the calendar day before their intended use, and objections will be provided no later than 8:00 p.m. Eastern Time that same day.  The parties shall promptly meet and confer by 9:30 p.m. Eastern Time on any such objections.  If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's

attention prior to the witness being called to the witness stand.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objections to the exhibit.

25.    On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

26.    Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to all objections, including those that may arise by virtue of the change in the identity of the party sponsoring the exhibit.  If such evidentiary objections are overruled, any such exhibit may be admitted into evidence.  Any exhibit, once admitted, may be used equally by each party.  The listing of an exhibit by a party on its exhibit list does not waive any evidentiary or other objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence.

27.    The parties agree that notice of a party's intended use of blow-ups (enlargements) of trial exhibits and/or deposition testimony and of ballooning, excerption, highlighting, etc. of such exhibits and/or deposition testimony need not be given (and need not be exchanged as a demonstrative exhibit), as long as the party has identified its intent to use the trial exhibit and/or deposition testimony according to the provisions of this Order, and such ballooning, excerption, highlighting, etc., accurately reflects the content of the exhibit.

28.    Exhibits that a party seeks to move into evidence to which no objection has been made will be received into evidence without the need for additional foundation testimony once introduced through and shown to a testifying witness.

29.    The parties agree that any description or date of a document on an exhibit list is provided for convenience only and may not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

30.    Any documents, deposition transcripts, or portions thereof, not specifically identified herein or offered into evidence, may still be used at trial for purposes of impeachment

6

or rehabilitation, if otherwise competent for such purposes, and may be admitted into evidence consistent with the requirements of the Federal Rules of Evidence.

31.     To reduce the number of duplicate exhibits, where a deposition excerpt references a document by exhibit number and that identical document was also marked with a different trial exhibit number, a party may substitute one exhibit for the other.  In addition, the parties will meet and confer regarding replacing any poor print or digital quality copies of exhibits with substantively identical improved or higher quality or color copies.

32.     Legible photocopies of documents may be offered and received in evidence in lieu of originals thereof.  Electronic versions of document exhibits in their native format, such as spreadsheets or presentations, may be offered into evidence in lieu of paper or PDF versions. The parties will exchange replacement versions and/or native versions of exhibits prior to use in trial.

33.     Subject to other provisions of this Order, no party may offer as evidence an exhibit not present on its exhibit list absent Court order or by agreement of the parties

A.      **Demonstrative Exhibits**

34.     The parties agree that demonstrative exhibits the parties and experts intend to use at trial do not need to be included on their respective lists of trial exhibits attached hereto. Demonstrative exhibits, subject to objection, may be shown to the jury if allowed by the Court, but will not be admitted into evidence.

35.     The parties shall identify and exchange demonstratives to be used in opening statements by 3:00 p.m. Eastern Time the calendar day before opening statements will be given. The parties shall exchange any objections to such demonstrative exhibits to be used in opening statements by 5:00 p.m. Eastern Time on the day they are exchanged, and shall promptly meet and confer on any such objections by 6:00 p.m. Eastern Time on the day they are exchanged.  If objections cannot be resolved by the parties, the unresolved issues will be raised with the Court in the morning before the opening statements.

36.     The parties shall identify and exchange demonstrative exhibits to be used in connection with direct examination of witnesses by 6:30 p.m. Eastern Time the calendar day before the demonstrative will be used.  The parties shall exchange any objections to such demonstrative exhibits to be used by witnesses by 8:30 p.m. Eastern Time on the day they are exchanged, and shall promptly meet and confer on any such objections by 9:30 p.m. Eastern Time on the day they are exchanged.

37.     The parties shall identify and exchange demonstrative exhibits to be used in closing arguments that have not already been used with a witness by 7:00 p.m. Eastern Time the day before the closing argument will be given.  The parties shall exchange any objections to such demonstrative exhibits to be used in closing arguments by 8:00 p.m. Eastern Time on the day they are exchanged, and shall promptly meet and confer on any such objections by 9:00 p.m. Eastern Time on the day they are exchanged.  Any demonstrative allowed by the Court and previously shown to the jury need not be exchanged.

38.     The party seeking to use a demonstrative exhibit shall provide a color (if the original exhibit is in color) representation of the demonstrative in PDF format to the other side. For videos or animations, the party seeking to use the demonstrative exhibit shall provide it to the other side in digital interactive format, including, as applicable, flash format, PPT format, MPG, or other video format.  For irregularly sized physical demonstrative exhibits, the party seeking to use it shall provide a color representation in PDF format, indicating to the other party its intended physical size at trial.

39.     The foregoing provisions do not apply to demonstratives created during testimony or to exhibits and demonstratives to be used for cross examination, neither of which need to be provided to the other side in advance of their use (without waiving either party's right to object to the same).

40.     The parties agree that the above stated provisions regarding exchanges of exhibits do not require the disclosure of exhibits, including demonstratives, to be used solely for cross-examination or rebuttal.

## VI.     WITNESS LISTS AND DEPOSITION DESIGNATIONS

### A.     <u>Witness Lists</u>

41.     Aqua Connect intends to call the following witnesses, with an indication of whether the witness will appear live or by deposition testimony:

a.     Ronnie Exley (fact witness, live);

b.     Matt Ervin (fact witness, remote live testimony or in the alternative by deposition – the witness cannot travel due to health reasons)[1];

c.     Renee Cohen (fact witness, live);

d.     Joseph Cohen (fact witness, by deposition),

e.     Jim W. Bergman (expert witness, live);

f.     Michael Shamos, Ph.D. (expert witness live); and

g.     Jeffrey A. Stec, Ph.D (expert witness, live).

42.     Aqua Connect reserves the right to revise or supplement this list consistent with the Pretrial Order or as otherwise permitted by the Court.  Aqua Connect reserves the right to call live as a witness at trial any witness called live by Defendants or identified on Defendants' trial witness list.  Aqua Connect further reserves the right to call by deposition any fact witness identified or offered by Defendants, including designations responsive to those on behalf of Defendants pursuant to Fed. R. Civ. P. 30(b)(6).  Aqua Connect further reserves the right to call any witness necessary for the purpose of impeachment.

43.     Defendants intend to call the following witnesses, with an indication of whether the witness will appear live or by deposition testimony:

a.     Georg Beyschlag (fact witness, live);

b.     Michael Schanz (fact witness, live);

---

[1] TeamViewer objects to Mr. Ervin testifying remotely.  Setting up remote testimony at trial consumes significant time.  And, more importantly, having to cross-examine a witness remotely puts TeamViewer at a significant disadvantage.  Mr. Ervin was deposed in December, at which time Aqua Connect had the opportunity to examine him.  TeamViewer should not be prejudiced at trial by Aqua Connect's failure to ask questions of Mr. Ervin at his deposition.

      c.      Marc Epard (fact witness, live if available, otherwise by deposition);

      d.      Dr. Benjamin Goldberg (expert witness, live);

      e.      W. Christopher Bakewell (expert witness, live);

      f.      Sarah Butler (expert witness, live);

      g.      Ronnie Exley (fact witness, live if available, and by deposition, including designations responsive to those on behalf of Aqua Connect pursuant to Fed. R. Civ. P. 30(b)(6));

      h.      Joseph Cohen (fact witness, live if available, and by deposition, including designations responsive to those on behalf of Aqua Connect pursuant to Fed. R. Civ. P. 30(b)(6));

      i.      Matt Ervin (fact witness, live if available, and by deposition, including designations responsive to those on behalf of Aqua Connect pursuant to Fed. R. Civ. P. 30(b)(6)).

44.     TeamViewer also reserves the right to call any witness listed on Aqua Connect's witness lists.  TeamViewer also reserves the right to call any witness (whether or not listed herein) for purposes of impeachment as contemplated by Federal Rule of Civil Procedure 26(a)(3)(A).

45.     The parties reserve the right to add or delete witnesses, including any witness who may be deposed between the date of this list and trial, or otherwise amend their respective witness lists as appropriate.  By identifying these witnesses, the parties are not required to call them at trial, nor are the parties limited in the manner in which such testimony is presented at trial.

46.     The parties agree that designated fact witnesses on both Aqua Connect's and TeamViewer's witness lists will be called just once.  Deposition designations and counter-designations will be read at the same time.

47.     The parties shall disclose by email the identity of any witnesses they intend to call, and whether each such witness will be called live or by deposition, and the order in which they are to be called, by 6:30 p.m. Eastern Time two (2) days before the day of trial during which

the witness will testify.  In other words, if a witness will testify on a Wednesday, the witness must be identified by 6:30 p.m. Eastern Time on the Monday prior to said Wednesday.

48.     The parties agree that the Court shall order fact witnesses, including rebuttal witnesses but excluding corporate representatives, excluded during witness testimony prior to their testifying at trial.  The exclusion does not apply to opening statements and closing arguments.  The parties agree that one party representative (who also may be a witness) from each side may attend trial.  The parties further agree that expert witnesses may attend trial.

### B.   <u>Deposition Designations and Objections</u>

49.     Aqua Connect intends to call Joseph Cohen by deposition, and may also call Matt Ervin by deposition.  Aqua Connects' deposition designations and TeamViewer's objections and counter-designations are set forth in **Exhibit 9**.

50.     TeamViewer intends to call the following witnesses by deposition, only if they are not available for live testimony:  Marc Epard, Joseph Cohen, and Matt Ervin  TeamViewer's deposition designations and Aqua Connect's objections and counter-designations are set forth in **Exhibit 10**.

51.     A party may rely on any of the opposing party's deposition designations as counter-designations.  For convenience and sake of brevity, the parties have listed counter-designations in response to specific affirmative designations by their opposing parties. To the extent an opposing party withdraws any affirmatively designated testimony, a party may present its counter-designation testimony in response to other specified affirmative testimony by the opposing party, or re-designate its counter-designated testimony affirmatively. Similarly, a party may designate testimony identified as affirmative testimony in this order as a counter-designation.

52.     With respect to those witnesses whom the parties have identified as being called to testify live at trial, no deposition designations or counter-designations are required.  Should a fact witness identified as testifying live at trial become unavailable, the parties may provide

designations and counter-designations of the witness's deposition transcript, as well as objections to the opposing party's designations, by 6:00 p.m. Eastern Time three (3) days in advance of when the witness is expected to be called at trial.

53.     All deposition testimony to be offered by electronic video clips including affirmative and counter-designated testimony, shall be served on the other party by 6:30 p.m. Easter Time three (3) days before the witness is to be called at trial.  To the extent not already resolved by the Court, the other party will provide a list of final objections and counter-designations by 6:30 p.m. Eastern Time one day after such designations were provided.  The parties shall then promptly meet and confer by 9:00 p.m. Eastern Time that same day to resolve any objections to the designated testimony.

54.     If there are any objections that cannot be resolved, the objecting party shall, no later than 10:00 p.m. Eastern Time one day before the witness is to be called at trial, submit to the Court, on behalf of all parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief indication (*i.e.*, no more than one sentence per objection) of the basis for the objection and the offering party's response to it.  The time required to argue and resolve any such objections will be charged to each party's time for the presentation of evidence in amounts to be determined by the Court.

55.     Designated deposition testimony will be offered to the Court as designated testimony that a party plays by video or reads into the record in Court and will count against that party's trial presentation time.  Specifically, any affirmative designations offered by a party will count against that party's trial presentation time whereas any counter-designations by the other party will count against the party who made the counter-designations.  It shall be the responsibility of the party offering the deposition testimony to calculate the time to be allocated to each party, which shall be disclosed at the same time the electronic video clips are served on the other party and, absent objection, shall be the responsibility of the party offering the

deposition testimony to inform the Court of the time to be allocated to each party for the deposition testimony.

56.     The parties agree that objections and statements by counsel will not be introduced except where necessary to understand the answer to the question.

57.     When deposition designation excerpts are introduced, counter-designations to those excerpts will be introduced (either read or played) simultaneously in the sequence in which the testimony was originally given.  Further, unless otherwise agreed to by the parties or ordered by the Court, the designated portions of a deposition (including the affirmative and counter designations) shall be read or played in order from the beginning of the transcript to the end.

58.     The parties agree that exhibit(s) referenced in a designated deposition excerpts may be presented and shown to the jury at the same time that the excerpt is played or read. Such exhibits shall be admitted into evidence if it is included on the offering party's trial exhibit list and both (1) is not otherwise objected to, or is included on, the joint trial exhibit list and (2) the exhibit is disclosed in accordance with procedure governing exhibit exchanges and disclosures in this Order.

59.     The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment or cross-examination of a witness, or to portions of deposition transcripts and/or video played in opening or closing statements. Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

60.     The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment or cross-examination of a witness. Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

13

61.     When a party seeks to impeach a witness by prior inconsistent testimony, the party may directly confront a witness with impeaching testimony without first having to qualify the testimony as impeaching. Objections for completeness would be resolved in the normal course during the examination.

## VII.    AQUA CONNECT'S STATEMENT OF INTENDED PROOF INCLUDING DETAIL ON DAMAGES CLAIM

62.     Aqua Connect intends to prove that TeamViewer has infringed the asserted claims of the patents-in-suit by making, using, offering for sale, and selling in the United States and importing into the United States the "remote connection" features of the following TeamViewer products (the "Accused Products"):

- Apple Mac versions of the following products:
  - TeamViewer, all versions from the stable release as of December 30, 2014 (9.0.29200) through the present version (15.7.6);
  - TeamViewer Host, all versions from the stable release as of December 30, 2014 (9.0.29200) through the present version (15.7.6);
  - TeamViewer QuickSupport, all versions from the stable release as of December 30, 2014 (9.0.29200) through the present version (15.7.6);
  - TeamViewer QuickJoin, all versions from the stable release as of December 30, 2014 (9.0.29200) through the present version (15.7.6); and
- Apple iOS versions of the following products:
  - TeamViewer, all versions from the stable release as of December 30, 2014 (9.0.10520) through the present version (15.7.1); and
  - TeamViewer QuickSupport, all versions from the stable release as of December 30, 2014 (9.0.10520) through the present version (15.7.1) (claims 25 and 27 of the '386 Patent, and claims 25 and 27 of the '502 Patent only)

14

63.     Aqua Connect further intends to prove that TeamViewer's infringement of the Patents-in-Suit was willful; that damages should be awarded to Aqua Connect due to TeamViewer's infringement of the patents-in-suit; that Aqua Connect should be awarded a reasonable royalty for TeamViewer's infringement under 35 U.S.C. § 284; that Aqua Connect should be awarded enhanced damages under 35 U.S.C. § 284 for TeamViewer's willful infringement of the patents-in-suit; that Aqua Connect should be awarded its costs and reasonable attorneys' fees under at least 35 U.S.C. § 285; and that Aqua Connect is entitled to permanent injunctive relief enjoining TeamViewer from further infringement of any of the Patents-in-Suit.

64.     Aqua Connect also intends to establish that it should be awarded prejudgment and postjudgment interest under 35 U.S.C. § 284.

65.     Aqua Connect will seek an order awarding any other such relief as is just and proper.

66.     Aqua Connect also intends to rebut any assertions by TeamViewer that the patents-in-suit are not infringed and invalid.  Aqua Connect intends to establish the date of invention for purposes of determining what is and is not prior art to the patents-in-suit.  Aqua Connect also intends to rebut any assertions by TeamViewer that it is licensed under the Apple license, or that Aqua Connect's patent rights as to TeamViewer's products were exhausted by that license.

## VIII.   TEAMVIEWER'S STATEMENT OF INTENDED PROOF OF DEFENSES AND COUNTERCLAIMS

67.     Pursuant to Local Rule 16.3 and the Scheduling Order entered by the Court (D.I. 23), TeamViewer provides this statement of intended proof in this case. TeamViewer does not address proof that TeamViewer may choose to present in rebuttal to the evidence that Aqua Connect may present at trial in its case-in-chief or rebuttal case, and/or for which Aqua Connect maintains the burden of proof. TeamViewer reserves its right to modify its statement of intended

proof based on any of Aqua Connect's pretrial statements and to the extent any amendments or other alterations arise impacting the facts or issues for trial.

68.    Invalidity: TeamViewer intends to establish through expert witnesses, fact witnesses, admissions, and evidence adduced at trial that the asserted claims of the '386 and '502 patents are invalid as anticipated by prior art under 35 U.S.C. § 102 and obvious in light of prior art under 35 U.S.C. § 103. To the extent necessary, TeamViewer intends to establish that the references on which it intends to rely for anticipation and/or obviousness are prior art to the '386 and '502 patents. TeamViewer intends to establish that the asserted claims of the '386 and '502 patents are invalid as indefinite under 35 U.S.C. § 112 ¶ 2. TeamViewer intends to establish that the asserted claims of the '386 and '502 patents are invalid for failure to meet the written description requirement under 35 U.S.C. § 112 ¶ 1. TeamViewer will rebut Aqua Connect's allegations that the '386 and '502 patents are entitled to a date of invention that is earlier than the date of the prior art references on which TeamViewer relies for anticipation and/or obviousness of the '386 and '502 patents under 35 U.S.C. §§ 102 and 103. TeamViewer intends to establish through expert witnesses, fact witnesses, admissions, and evidence adduced at trial that the asserted claims of the '386 patent are invalid for failure to comply with 35 U.S.C. §§ 115, 116, and 251 due to improper broadening during reissue, lack of support by a proper broadening declaration, and broadening more than two years after the reissuance of U.S. Patent No. 8,549,093 (the "'093 patent").

69.    Non-Infringement: TeamViewer intends to establish through expert witnesses, fact witnesses, admissions, and evidence adduced at trial that Aqua Connect has not carried its burden of establishing by a preponderance of the evidence that TeamViewer infringes the asserted claims of the '386 and '502 patents by making, using, selling, or offering for sale within the United States, or importing into the United States the Accused Products. TeamViewer further intends to establish that Aqua Connect has not carried its burden of establishing by a preponderance of the evidence that TeamViewer induces users of the Accused Products to

directly infringe the '386 and '502 patents.  Aqua Connect makes no allegations of infringement under the Doctrine of Equivalents.

70.     <u>No Willful Infringement</u>: Although TeamViewer denies infringement and intends to present supporting evidence to prove that Aqua Connect has not carried its burden of establishing that the Accused Products infringe the asserted claims of the '386 and '502 patents, TeamViewer also intends to demonstrate that Aqua Connect has not carried its burden of establishing that TeamViewer has willfully infringed the asserted claims of the '386 and '502 patents.

71.     <u>Damages</u>: TeamViewer intends to establish through expert witnesses, fact witnesses, admissions, and evidence adduced at trial that Aqua Connect is not entitled to damages of any amount, particularly because TeamViewer does not infringe, either literally or under the doctrine of equivalents, any of the asserted claims of the '386 and '502 patents, nor does TeamViewer induce direct infringement of the asserted claims of the '386 and '502 patents, and because the asserted claims of the '386 and '502 patents are invalid. TeamViewer also intends to establish that, to the extent TeamViewer is found to infringe any asserted claims of the '386 and '502 patents and such claims also are found to be valid, the amount Aqua Connect is seeking in damages is far in excess of what is reasonable in light of the facts. TeamViewer will rebut Aqua Connect's claim that it is entitled to an award of enhanced damages under 35 U.S.C. § 284 or an award of attorney's fees under 35 U.S.C. § 285.

72.     TeamViewer will show through expert witnesses, fact witnesses, admissions, and evidence adduced at trial that GoToMyPC is an acceptable, noninfringing alternative.

73.     TeamViewer will show through expert witnesses, fact witnesses, admissions, and evidence adduced at trial that the redesign of the TeamViewer Product proposed by TeamViewer is an acceptable, noninfringing alternative.

74.     TeamViewer will show through expert witnesses, fact witnesses, admissions, and evidence adduced at trial that the present case is exceptional and that TeamViewer is entitled to

an award of attorneys' fees pursuant to 35 U.S.C. § 285, and to any other relief the Court deems proper.

75.     <u>Patent Exhaustion</u>: through expert witnesses, fact witnesses, admissions, and evidence adduced at trial that Aqua Connect's rights in the '386 and '502 patents are exhausted with respect to the accused products as a result of the Settlement and License Agreement between Aqua Connect and ███████████████████.

76.     <u>Counterclaims of Invalidity</u>: TeamViewer intends to establish through expert witnesses, fact witnesses, admissions, and evidence adduced at trial that the asserted claims of the '386 and '502 patents are invalid as anticipated by prior art under 35 U.S.C. § 102 and obvious in light of prior art under 35 U.S.C. § 103. To the extent necessary, TeamViewer intends to establish that the references on which it intends to rely for anticipation and/or obviousness are prior art to the '386 and '502 patents. TeamViewer intends to establish that the asserted claims of the '386 and '502 patents are invalid as indefinite under 35 U.S.C. § 112 ¶ 2. TeamViewer intends to establish that the asserted claims of the '386 and '502 patents are invalid for failure to meet the written description requirement under 35 U.S.C. § 112 ¶ 1. TeamViewer will rebut Aqua Connect's allegations that the '386 and '502 patents are entitled to a date of invention that is earlier than the date of the prior art references on which TeamViewer relies for anticipation and/or obviousness of the '386 and '502 patents under 35 U.S.C. §§ 102 and 103. TeamViewer intends to establish through expert witnesses, fact witnesses, admissions, and evidence adduced at trial that the asserted claims of the '386 and '502 patents are invalid for failure to comply with 35 U.S.C. §§ 112, 132, and 251(a). TeamViewer intends to establish through expert witnesses, fact witnesses, admissions, and evidence adduced at trial that the asserted claims of the '386 patent are invalid for failure to comply with 35 U.S.C. §§ 115, 116, and 251 due to improper broadening during reissue, lack of support by a proper broadening declaration, and broadening more than two years after the reissuance of the '093 patent.

77.     <u>Counterclaims of Non-Infringement</u>: TeamViewer intends to establish through expert witnesses, fact witnesses, admissions, and evidence adduced at trial that Aqua Connect

has not carried its burden of establishing by a preponderance of the evidence that TeamViewer infringes the asserted claims of the '386 and '502 patents by making, using, selling, or offering for sale within the United States, or importing into the United States the Accused Products. TeamViewer further intends to establish that Aqua Connect has not carried its burden of establishing by a preponderance of the evidence that TeamViewer induces users of the Accused Products to directly infringe the '386 and '502 patents.

## IX.    AMENDMENTS TO THE PLEADINGS

78.    There are no amendments to the pleadings desired by any party.

## X.    SETTLEMENT CERTIFICATION

79.    The parties certify that they have engaged in a good faith effort to explore the resolution of this case by settlement, but were unable to reach a resolution.

## XI.    PRESENTATION OF CONFIDENTIAL INFORMATION DURING TRIAL

80.    Any party may request that the Court seal the courtroom when that party's Confidential or Highly Confidential information will be offered through testimony, exhibit, demonstrative, or argument.  If the Court determines that sealing is warranted, all persons not authorized under the Protective Order in this case to access the Confidential or Highly Confidential information to be presented shall be excused from the Court, including any designated party representative.  Counsel shall inform the Court upon the conclusion of the testimony, exhibit, demonstrative, or argument containing Confidential or Highly Confidential so that the courtroom may be unsealed.

81.    The party requesting that the courtroom be sealed to protect its Confidential or Highly Confidential information shall be charged with the time to seal and unseal the courtroom.

## XII.   OTHER MATTERS

### A.   <u>Trial Presentation and Time Limits</u>

82.     This case is currently scheduled for a five-day trial beginning at 9:30 a.m. on August 8, 2022, with subsequent trial days beginning at 9:00 a.m. and the jury excused each day at 4:30 p.m.

83.     The parties agree to the following time limits:  10 hours per side for direct, cross, and rebuttal examination.  Side bar conferences on objections during witness testimony shall be charged to the party raising the objection unless the Court elects to charge the party offering the testimony.  The parties further request [<u>TeamViewer Proposal</u>: 45 minutes] [<u>Aqua Connect Proposal</u>: 30 minutes] per side for an opening statement and [<u>TeamViewer Proposal</u>: 75 minutes] [<u>Aqua Connect Proposal</u>: 60 minutes] per side for closing.

84.     The Courtroom Deputy will keep a running total of trial time used by counsel.

85.     The presentation at trial will occur in the following order:

     a.     Aqua Connect's opening statement;

     b.     TeamViewer's opening statement;

     c.     Aqua Connect's case-in-chief

     d.     TeamViewer's rebuttal case and case-in-chief on counterclaims;

     e.     Aqua Connect's rebuttal case on counterclaims;

     f.     Aqua Connect's closing argument;

     g.     TeamViewer's closing argument.

86.     Pursuant to Fed. R. Civ. P. 26(a)(3)(A)(i), the parties' witness-lists identify those witnesses the parties expect to call.  If a party seeks to offer testimony from a witness at trial, it must be included in this Pretrial Order either on the party's witness list (if live) or by designation (if by deposition). This does not mean that a party will necessarily call all such witnesses, nor present all of their designated testimony.

The parties have agreed that on cross-examination of fact witnesses called live at trial, adverse testimony beyond the scope of direct examination, but relevant to the cross-

20

examining party's case, may be elicited. As such, TeamViewer may elicit testimony relevant to its case-in-chief during cross-examination of Aqua Connect's live fact witnesses called during Aqua Connect's case-in-chief, and vice versa. Aqua Connect's case-in-chief may thus be held open until after Aqua Connect has been allowed to elicit testimony during cross-examination of TeamViewer's live fact witnesses called during TeamViewer's case-in-chief. The parties further agree that fact witnesses called by Aqua Connect during Aqua Connect's case-in-chief will not be recalled again by TeamViewer during TeamViewer's case-in-chief, but rather that, as described above, TeamViewer is entitled to cross examine Aqua Connect's fact witnesses beyond the scope of Aqua Connect's direct examination.

### B.     **Motions In Limine**

87.     Aqua Connect's motions in limine, oppositions, and replies are set forth in **Exhibits 11, 12, and 13.**

88.     TeamViewer's motions in limine, oppositions, and replies are set forth in **Exhibits 14, 15, and 16**.

### C.     **Voir Dire, Jury Instructions, and Verdict Form**

89.     The parties' proposed preliminary and final jury instructions and verdict forms, including objections and competing alternate proposals where applicable, have been separately filed with the Court.

### D.     **Jurors and Jury Procedures**

90.     There shall be eight jurors. The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading *voir dire* to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers, then addressing any challenges for cause, and concluding back in the courtroom with peremptory strikes.

91.     On the first day of trial, each member of the jury will be provided a binder (prepared by Aqua Connect) containing the patents-in-suit, a listing of the Court's claim construction rulings for terms in the asserted claims, and a notepad for notes.

92.     The parties agree that the jurors shall be permitted to write notes by hand on their notepads during the trial, and that jurors be permitted to bring their provided binders and notepads into the deliberation room.  The parties further propose that the jurors' binders be collected by the clerk each evening after daily recess, and collected and destroyed without review after the jury's discharge.

### E.     Objections to Expert Testimony

93.     The parties request that the Court should rule at trial on any objections to expert testimony as outside the scope of prior expert disclosures.

### F.     Set-up of Electronic Equipment

94.     The parties request that the Court grant them access to the Courtroom on Friday, August 5, 2022, the business day before trial begins, to allow them to set up electronic and computer devices to be used during the trial.

### G.     Other Stipulations

95.     The parties agree that neither party will disparage the United States Patent Office.

96.     The parties agree that written responses to interrogatories may be used at trial consistent with the Federal Rules of Civil Procedure and Federal Rule of Evidence even if such responses have not been verified by the responding party.

97.     The parties agree that that they will not offer evidence or arguments related to theories, claims, patents, or defenses that are no longer in the case.

### H.     Invalidity Issues – 35 U.S.C. §§ 112 ¶ 2, 251

98.     TeamViewer has two invalidity defenses for which the parties agree that there are only issues of law to decide.  First, TeamViewer asserts that the '386 patent, which is a reissue of U.S. Patent No. 8,549,093 (the '093 patent), is invalid for failing to adhere to the statutory

requirements governing reissue applications under 35 U.S.C. § 251.  Second,  TeamViewer

asserts that all asserted claims are indefinite under 35 U.S.C. § 112 ¶ 2 under the Court's

construction of "Mach-derived."

99.     Aqua Connect denies both assertion and contends that TeamViewer cannot prove

that the patents-in-suit are invalid under either 35 U.S.C. § 251 or 35 U.S.C. § 112 ¶ 2.

100.    The parties agree that there are no genuine issues of material fact with respect to

either defense.  Accordingly, the parties believe that these invalidity defenses raise only issues of

law for the Court, not the jury, to decide.

### I.      <u>Objections to Late Disclosure of Witnesses</u>

#### i.      **TeamViewer's Position**

██    ████████

██    ██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████.

102.    TeamViewer intended to call Mr. Cohen as an adverse witness in this case.  As

recently as April 27, 2022, in Plaintiffs' Third Supplemental Initial Disclosures, Mr. Cohen was

listed as having discoverable knowledge related to "[i]nventions of U.S. Patent Nos. RE46,386

and 8,924,502; conception, reduction to practice, and inventorship of the inventions of the

Asserted Patents; scope and content of the prior art; background on the technology of the

Asserted Patents; [and] disclosure of prior art."

103.    ████████████████████████████

████████████████████████████████████



**(2)   Renee Cohen**

105.     TeamViewer also objects to Aqua Connect's late disclosure of one of its witnesses: Renee Cohen.  Aqua Connect did not disclose either Ms. Cohen as a person likely to have discoverable information until ***five months after*** fact discovery closed—on April 27, 2022—in Plaintiffs' Third Supplemental Initial Disclosures.

106.     Ms. Cohen has been involved with Aqua Connect for many years, and long before the inception of this lawsuit.  Aqua Connect has long since known of her role at Aqua Connect

and her belatedly-disclosed knowledge that is purportedly relevant to the case.  There is no good cause for Aqua Connect's late disclosure of this witness.

107.    Ms. Cohen has not been deposed.

108.    Plaintiffs' 30(b)(6) deponent, Ronnie Exley, testified on December 16, 2021, the last day of fact discovery, that Renee Cohen was the former CEO of Aqua Connect, Inc. and is currently the secretary of the company and a member of the board of directors.  *See* Exley Dep. Tr. at 16:2-7, 39:9-12, 94:8-18, 96:1-16.  At no point during his deposition did Mr. Exley state, or in any way suggest, that Ms. Cohen was involved in the technical development, conception, or invention of the asserted patents or Aqua Connect's products.  Yet, Plaintiffs have now at the last hour identified Ms. Cohen as someone who has discoverable information about the "[t]echnology background; Aqua Connect products; [and] invention of the Patents-in-Suit." Although her name appears on a single organizational chart that Aqua Connect produced, Renee Mehrian (now Renee Cohen) is listed only as "Secretary."  AQUA_008598.  This by no means indicated to TeamViewer that she had discoverable information about the topics above.



110.    When TeamViewer objected in late April to the addition of Ms. Cohen for the first time in Aqua Connect's Third Supplemental Initial Disclosures, Aqua Connect offered no excuse for the remarkably-late disclosure.

111.    The late disclosure of this trial witness (presumably to fill in where the absent Mr. Cohen would otherwise have testified) is extremely prejudicial to TeamViewer, and she should therefore be precluded from testifying at trial.  At a minimum, if the Court were to allow Ms. Cohen to testify, TeamViewer requests leave to conduct her deposition, requests leave to

seek documents from her, and requests that Aqua Connect be directed to give TeamViewer an advance and complete summary of her expected trial testimony.

112.    ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

113.    Aqua Connect has consistently sought to avoid TeamViewer discovering any of the information outlined above, and did not timely disclose Ms. Cohen.  As such, Ms. Cohen should be precluded from testifying at trial.

ii.       **Aqua Connect's Position**

114.    TeamViewer seeks to exclude testimony from two Aqua Connect witnesses—Joseph Cohen and Renee Cohen.  Rather than seek exclusion in a motion *in limine* (which would have been the proper procedure), TeamViewer does so in this Joint Pretrial Order, effectively expanding its motions *in limine* to five.  TeamViewer's requests to exclude should be denied for this reason alone.  In the event the Court considers TeamViewer's two additional motions *in limine*, they should be denied on their merits.

(1)      **Joseph Cohen**

115.    TeamViewer's argument that Aqua Connect should not be permitted to present Joseph Cohen's testimony at trial by deposition is premised on the assertion that TeamViewer "intended to call Mr. Cohen as an adverse witness in this case" and did not learn of his incarceration until the July 11, 2022 meet and confer on Aqua Connect's motion *in limine* regarding Mr. Cohen.  TeamViewer's argument should be rejected.

116.

118.



119.    TeamViewer's request to exclude Mr. Cohen's deposition testimony should be denied.

### (2)    Renee Cohen

120.    Although Aqua Connect did not list Renee Cohen on its initial disclosures until its April 27, 2022, Third Supplemental Initial Disclosures, Ms. Cohen was well known to TeamViewer long before then.  Renee Cohen was identified in documents in that Aqua Connect produced early in this case.  Further, both Joseph Cohen and Ronnie Exley (Aqua Connect's CEO) testified extensively about Renee Cohen and her role at the company.  Those depositions occurred on October 22, 2019 (long before the close of fact discovery in this case) and on December 16, 2021, respectively.  By then, TeamViewer knew exactly who Renee Cohen was and what she did at Aqua Connect.  In fact, Joseph Cohen, more than two years before the fact discovery cut-off, repeatedly identified Renee Cohen (then using her married name, Renee Mehrian) as someone with knowledge of information relevant to questions posed.  If TeamViewer had wanted Renee Cohen's deposition at that time, Aqua Connect would have stipulated to a brief extension of the fact discovery deadline in this case to accommodate that request.  In fact, due to the pandemic, most of the depositions in this case did not take place until December 2021, shortly before the fact discovery cut-off, so a brief extension would have been entirely appropriate.

121.     TeamViewer asserts that before Mr. Exley's deposition, TeamViewer only knew that Renee Cohen was "Secretary" of Aqua Connect.  That is false.  Early in this case, Aqua Connect produced a "Declaration of Renee Mehrian" that she provided in a prior matter.  Then TeamViewer's counsel questioned Joseph Cohen regarding the declaration during this deposition two years before the fact discovery cut-off in this case.  Paragraph 1 of the declaration sates that Renee Cohen is the not only the Secretary of Aqua Connect, but "responsible for overseeing operations of the company" and that she had "knowledge of Aqua Connect's operations." AQUA_016951.  In the 30 numbered paragraphs that follow, Renee Cohen goes on to describe Aqua Connect's remote connection products, its patents and technology, and the company's investments in that technology.

122.     TeamViewer's suggestion that it would have sought additional documents and deposed Renee Cohen if she had been listed in an earlier supplement to Aqua Connect's initial disposures makes no difference.  First, Aqua Connect is unaware of any documents regarding Renee Cohen's knowledge and role at the company that it did not produce in this case.  Second, when Aqua Connect served its Third Supplemental Initial Disclosures more than three months ago, it offered to make Renee Cohen available for deposition.  TeamViewer never responded. Instead, TeamViewer apparently decided months ago to use the supplemental disclosure as a way to exclude Renee Cohen as a trial witness.

123.     TeamViewer's request to exclude Renee Cohen as a trial witness should be denied.  Aqua Connect stands by its offer to make Renee Cohen available for deposition, and that deposition should be limited to no more than three hours.

### J.     Objections to Late Disclosure of Exhibits

#### i.     TeamViewer's Position

124.     Aqua Connect has shown a pattern of withholding from TeamViewer critical information and then disclosing it long after it was required to do so, to Aqua Connect's benefit and TeamViewer's detriment.  First, as discussed above, Aqua Connect concealed for two years that Joseph Cohen was incarcerated, claiming that he could be contacted through Aqua

29

Connect's counsel.  Only a few weeks before trial did Aqua Connect finally reveal that Mr.

Cohen was incarcerated and had pleaded guilty to very serious crimes.  Second, as also discussed

above, Aqua Connect waited until five months after the close of fact discovery to identify as a

relevant witness someone who had been heavily involved with the companies for years prior to

this suit.  Now, just a few days ago, Aqua Connect has done it again, this time with its exhibit list

attached hereto as Exhibit 7.

125.    Aqua Connect was required under the local rules to provide its exhibit list to

TeamViewer by June 24, 2022.  At the request of Aqua Connect's counsel, TeamViewer agreed

to extend that deadline by five days.  On June 29, 2022, Aqua Connect served on TeamViewer

its exhibit list, which contained 190 exhibits.  TeamViewer provided Aqua Connect with its

objections to those exhibits two weeks later.  Then, nearly three weeks after Aqua Connect

served its exhibit list, Aqua Connect served an "amended" exhibit list that is more than double in

size of the original.  Aqua Connect added over two hundred new exhibits.

126.    In serving this "amended" list, Aqua Connect provided no explanation for its

failure to include on its original list the two hundred new exhibits other than to state that a few of

the new documents had been "inadvertently" left off.  One can perhaps understand inadvertently

forgetting to include a small handful of documents.  But not including over two hundred

documents—more than the entire original exhibit list—is nothing but gamesmanship aimed at

disrupting TeamViewer's trial preparation.

127.    Aqua Connect does not have good cause for amending its exhibit list three weeks

after the deadline.  It claims that it was permitted to amend the list because the new documents

were all things that had been previously produced in the case or had been part of its expert

reports.  But the fact that TeamViewer was aware of the documents in the case is different than

TeamViewer being aware that Aqua Connect intended to use them at trial.

128.    Aqua Connect's late disclosure of these two hundred new trial exhibits—just

three weeks before the start of trial—substantially prejudices TeamViewer's ability to prepare

for trial.  This prejudice cannot be cured at this late stage.  For that reason, TeamViewer requests that the Court exclude all of these newly-disclosed exhibits as untimely.

>    ii.    **Aqua Connect's Position**

129.    Aqua Connect has not been "withholding" anything from TeamViewer in preparing pretrial filings in this case.  As discussed above, Aqua Connect had no duty to inform TeamViewer of Mr. Cohen's arrest and once Aqua Connect learned about his changed plea and that he would be unavailable to testify live at trial, it promptly informed TeamViewer so that the parties could designate deposition testimony, which both parties have done.  Preparing and exchanging exhibit lists has been no different, and TeamViewers claims regarding "prejudice" from exhibits that Aqua Connect added within days of receiving TeamViewer's exhibit list are much exaggerated.

130.    The preparation of exhibit lists for trial is an iterative process, at least up to filing the final list with a court in advance of a pretrial conference.  As the parties agreed, Aqua Connect served its exhibit list on June 29, 2022.  The exhibit list contained 190 entries.  As the parties further agreed, TeamViewer served its exhibit list two weeks later, on July 13, 2022, containing 159 exhibits.  Several days later, on July 19, 2022, Aqua Connect served TeamViewer with a revised exhibit list.  The revised list removed 15 exhibits, including the opening and rebuttal expert reports of all six experts (which had been served months earlier).  The revised list also added 205 exhibits.

131.    The 205 exhibits that Aqua Connect added to its exhibit list fall into three main categories: First, the vast majority of the added exhibits (over 90%) consist of documents that the experts cited in their reports.  Aqua Connect removed all expert reports from its revised list because they are hearsay and should not have been included in the first place.  But the documents that experts cited in their reports may be admissible.  TeamViewer certainly had fair notice that Aqua Connect may use the documents its experts cited because the reports themselves were on Aqua Connect's June 29, 2022, exhibit list.  Moreover, TeamViewer is familiar with all the documents Aqua Connect's experts cited in their reports.  Expert reports were served months

31

ago, and Aqua Connect provided TeamViewer with all documents cited in its experts' reports. Then TeamViewer had a opportunity to depose Aqua Connect's experts about any of those documents. As to a number of the cited documents, it did so.  TeamViewer does not and cannot claim that it was unfamiliar with a single document previously cited in an expert report that Aqua Connect added to its exhibit list when it removed the reports themselves.  For the same reason, TeamViewer does not explain how it can possibly be "prejudiced" by the removal of the expert reports from the exhibit list and the addition of documents to the list that experts cited in the removed expert reports.

132.    The other two categories of added exhibits consist of a few documents that cannot possibly prejudice TeamViewer.  One category is a few document that TeamViewer put on its July 13, 2022, exhibit list that were not included on Aqua Connect's list.  Aqua Connect added those documents so that they could be made joint exhibits.  Documents on TeamViewer's own list cannot be prejudicial.  To the contrary, the parties agree in this proposed order that they can use each other's exhibits.  The other category is a list of links to TeamViewer's own website and links to YouTube videos that TeamViewer itself uploaded onto YouTube.  These links were inadvertently omitted from Aqua Connect's initial exhibit list.  And TeamViewer cannot complain about documents on its own website and videos it uploaded to other sites.  These are admissible party admissions that TeamViewer cannot be surprised by.  In fact, they can be used as such on cross-examination whether on an exhibit list or not.  Fed. R. Evid. 801.

133.    TeamViewer points to no authority stating that a party cannot amend its exhibit list, particularly prior to the pretrial conference.  Adding and deleting exhibits on an exhibit list before filing with the court in advance of a pretrial conference is commonplace.  In any event, the parties have agreed on a procedure in this Order for exchanging exhibits to be used with a witness the evening before that witness will testify and raising any objections at that time.  This Court should not preemptively exclude exhibits from Aqua Connect's list that TeamViewer will have had for nearly a month before an exhibit is disclosed for use at trial with any witness.

**K.    TeamViewer's Notice of Prior Art under 35 U.S.C. § 282**

134.     Pursuant to the June 22, 2021, Stipulation and Order to Extend Time, (D.I. 173), Aqua Connect narrowed the number of asserted claims and On January 25, 2022, TeamViewer narrowed its asserted prior art references to six, which it asserted as to each patent:

- U.S. Patent No. 8,166,518 ("Price '518")
- Price '518 in view of the knowledge of a POSITA
- Price '518 in view of Timbuktu 8.6
- The Apple Technical Note TN2083
- US Patent Application Publication No. 2005/256923 ("Adachi")
- US Patent Application Publication No. 2006/0050155 ("Ing")

135.     On July 8, 2022, TeamViewer served its 35 U.S.C. § 282 notice of "certain patents, publications, and other documents, including prior art, on which [TeamViewer] intend[s] to rely at trial…."  In addition to the six references listed above, TeamViewer's notice contains the following 12 references:

*Patent Prior Art*

- U.S. Patent 7,730,157
- U.S. patent 6,404,817
- Patent Application 2009/0080523
- U.S. Patent 8,290,907

*Publication Prior Art*

- The design and implementation of the 4.4 BSD operating system. Vol. 2. Reading, MA: Addison-Wesley, 1996 (TEAM0016820-TEAM0016845)
- "Mach: A foundation for open systems (operating systems)," Proceedings of the Second Workshop on Workstation Operating Systems, 1989, pp. 109-113 (TEAM0016846-TEAM0016851)
- http://www.mklinux.apple.com/ as of April 27, 1999 (captured by the Internet Archive, https://web.archive.org/web/199904270

33

14529/http://www.mklinux.apple.com/) (TEAM0016852, TEAM0016859-TEAM0016860)

- "MkLinux, Microkernel Linux for the Power Macintosh", Prime Time Freeware, 1998. (available in digitized form at https://archive.org/details/mklinux00rich)

- "The performance of μ-kernel-based systems" Proceedings of SOSP97: Sixteenth ACM Symposium on Operating Systems Principles. Saint Malo, France. October 5 - 8, 1997. Also published in ACM SIGOPS Operating Systems Review: Volume 31 Issue 5, Dec. 1997.

- "The Gang Scheduler - Timesharing the Cray T3D." Cray User Group (1996) at 247-252 (TEAM0016792-TEAM0016797)

- The Open Brand – Register of Certified Products – Unix 03 (TEAM0016770-TEAM16771)

- The Open Brand – Register of Certified Products – Apple Inc (TEAM0016768-TEAM0016769)

The parties agree that TeamViewer will continue stay within the bounds of its reduction of asserted prior art references.  In his opening report, TeamViewer's expert, Dr. Goldberg, cited and discussed these 12 references to show the state of the art at the time of the invention of the patents-in-suit and/or the general knowledge of a person of skill in the art.  His trial testimony on these 12 references will not go beyond that scope.  Moreover, Dr. Goldberg will limit his opinions that the patents-in-suit are invalid under 35 U.S.C. §§ 102 and 103 to the grounds set forth in his opening report, which is consistent with TeamViewer's narrowing of asserted prior art on January 25, 2022.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of these actions, unless modified by the Court to prevent manifest injustice.

**IT IS SO ORDERED** this _____ day of August, 2022.

_____

Honorable Maryellen Noreika
United States District Judge

Approved as to form and substance:

**STAMOULIS & WEINBLATT LLC**

_/s/ Richard C. Weinblatt_
Stamatios Stamoulis (DE Bar No. 4606)
Richard C. Weinblatt (DE Bar No. 5080)
800 N. West Street, Third Floor
Wilmington, DE 19809
Tel: (302) 999-1540
Stamoulis@swdelaw.com
Weinblatt@swdelaw.com

**OF COUNSEL:**

Ryan E. Hatch (admitted _pro hac vice_)
**HATCH LAW, PC**
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: 310-279-5076
ryan@hatchlaw.com

Lawrence M. Hadley (admitted _pro hac vice_)
Stephen Underwood (admitted _pro hac vice_)
**GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP**
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel: 310.553.3000
lhadley@glaserweil.com
sunderwood@glaserweil.com

_Attorneys for Plaintiff Aqua Connect, Inc.,_
_and Strategic Technology Partners, LLC_

**DLA PIPER LLP (US)**

_/s/ Brian A. Biggs_
Brian A. Biggs (DE Bar No. 5591)
Erin E. Larson (DE Bar No. 6616)
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Tel: (302) 468-5700
brian.biggs@dlapiper.com
erin.larson@dlapiper.com

**OF COUNSEL:**

Michael Jay (admitted _Pro Hac Vice_)
**DLA Piper LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Telephone: (310) 595-3000
Facsimile: (310) 595-3300
michael.jay@us.dlapiper.com

Paul Steadman (admitted _Pro Hac Vice_)
**DLA PIPER LLP (US)**
West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: (312) 368-2135
Facsimile: (312) 251-2850
paul.steadman@us.dlapiper.com

William L. Bartow (admitted _Pro Hac Vice_)
**DLA Piper LLP (US)**
1650 Market Street, Suite 4900
Philadelphia, PA 19103
Telephone: (215) 665-3300
william.bartow@us.dlapiper.com

Gianni Minutoli (admitted _Pro Hac Vice_)

**DLA PIPER LLP (US)**
11911 Freedom Dr., Suite 300
Reston, BA 20190
Telephone: (703) 773-4045
Facsimile: (703) 773-5019
gianni.minutoli@us.dlapiper.com

Benjamin Mueller (admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: (312) 368-4008
benjamin.mueller@us.dlapiper.com

*Attorneys for Defendants TeamViewer US,
Inc. and TeamViewer Germany GmbH*

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2022, the foregoing was served via electronic mail upon all counsel of record for the parties.

*/s/Richard C. Weinblatt*
Richard C. Weinblatt

36