IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AQUA CONNECT, INC. and STRATEGIC          )
TECHNOLOGY PARTNERS, LLC,                 )
                                          )
          Plaintiffs,                     )
                                          )
                                          )     C.A. No.  18-01572-MN
     v.                                   )     Consolidated
                                          )
TEAMVIEWER US, INC. and                   )
TEAMVIEWER GERMANY GMBH,                  )
                                          )
          Defendants.                     )

**FINAL JURY INSTRUCTIONS**

# TABLE OF CONTENTS

**Page**

1.   GENERAL INSTRUCTIONS .......................................................... 1

    1.1   INTRODUCTION ......................................................... 1

    1.2   BURDENS OF PROOF .................................................. 2

**2.**   PATENT JURY INSTRUCTIONS ................................................. 3

    2.1   SUMMARY OF PATENT ISSUES .............................. 3

    2.2   THE CLAIMS OF A PATENT ..................................... 4

    2.3   CLAIM CONSTRUCTION ........................................... 5

    2.4   PATENT INFRINGEMENT GENERALLY ................ 6

    2.5   DIRECT INFRINGEMENT .......................................... 7

    2.6   INDIRECT INFRINGEMENT – INDUCED INFRINGEMENT ......................... 8

    2.7   INDIRECT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT........... 9

    2.8   INVALIDITY – GENERALLY ................................... 10

    2.9   INVALIDITY – PERSPECTIVE OF ONE OF ORDINARY SKILL  IN THE ART ............. 11

    2.10   INVALIDITY – PRIOR ART ..................................... 12

    2.11   INVALIDITY – ANTICIPATION ............................. 13

    2.12   INVALIDITY – OBVIOUSNESS............................... 14

3.   DAMAGES........................................................................................ 16

    3.1   DAMAGES GENERALLY......................................... 16

    3.2   DATE OF COMMENCEMENT OF DAMAGES ............ 17

    3.3   REASONABLE ROYALTY – THE HYPOTHETICAL NEGOTIATION ....... 18

    3.4   REASONABLE ROYALTY – RELEVANT FACTORS UNDER THE HYPOTHETICAL NEGOTIATION................ 19

    3.5   REASONABLE ROYALTY – COMPARABLE AGREEMENTS................ 21

    3.6   REASONABLE ROYALTY – ATTRIBUTION/APPORTIONMENT ............ 22

    3.7   DAMAGES – AVAILABILITY OF NON-INFRINGING ALTERNATIVES................ 23

4.   DELIBERATION AND VERDICT ................................................ 24

    4.1   INTRODUCTION ....................................................... 24

    4.2   UNANIMOUS VERDICT........................................... 25

    4.3   DUTY TO DELIBERATE .......................................... 26

    4.4   SOCIAL MEDIA ........................................................ 27

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

4.5     COURT HAS NO OPINION ................................................................................. 28

1.    **GENERAL INSTRUCTIONS**

    1.1    **INTRODUCTION**

Now is the time for me to instruct you about the law that you must follow in deciding this case.  Please listen very carefully to everything I say.  In following my instructions, you must follow all of them, including the ones I gave you on Monday at the start of the case and the ones I have given during trial, and not single out some and ignore others.  They are all important.

You will have your written copy of these instructions, as well as my preliminary instructions, with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

I will start by reminding you of the respective burdens in this case, and then I will instruct you of the positions of the parties and the law you will apply in this case.  Then we will hear the closing arguments.  After that, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

## 1.2     BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  In a patent case such as this, there are two different burdens of proof that are used.  The first is called "preponderance of the evidence."  The second is called "clear and convincing evidence."  I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean.

Aqua Connect asserts that TeamViewer infringes the '386 and '502 patents and seeks money damages for the asserted infringement.  Aqua Connect has the burden of proving its claims and the amount of its money damages by a "preponderance of the evidence."  That means Aqua Connect had to prove to you, in light of all the evidence, that what it claims is more likely true than not.  To say it differently, if you were to put the evidence of Aqua Connect and the evidence of TeamViewer on opposite sides of a scale, the evidence supporting Aqua Connect's claims would have to make the scales tip somewhat on its side in each instance.  If the scale should remain equal or tip in favor of TeamViewer, you must find for TeamViewer.

In addition to denying Aqua Connect's claims that they infringe, TeamViewer asserts that the patents-in-suit are invalid.  TeamViewer has the burden of proving that the asserted claims are invalid and has to do so by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases.  That requirement is the highest burden of proof.  It does not apply to civil cases and, therefore, you should put it out of your mind.

2.      **PATENT JURY INSTRUCTIONS**

   2.1      **SUMMARY OF PATENT ISSUES**

You must decide the following issues in this case according to the instructions that I give

you:

1.      Whether Aqua Connect has proven by a preponderance of the evidence that

TeamViewer directly or indirectly infringes claim 25 and 27 of the '386 patent and claims 25 and

27 of the '502 patent; and

2.      Whether TeamViewer has proven by clear and convincing evidence that one or

more of the asserted claims of the '386 and '502 patents are invalid.

If you decide that TeamViewer infringes any claim of the patents-in-suit that is not invalid,

you will also need to decide any money damages to be awarded to compensate Aqua Connect for

that infringement.

## 2.2    <u>THE CLAIMS OF A PATENT</u>

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of a patent.  The claims are important because the words of a claim define the scope of the patent right.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but the claims define the extent of the patent's coverage.

Here, you will need to understand what each of the asserted claims covers in order to decide whether or not that claim is infringed and to decide whether or not that claim is invalid.

It is my job to define the terms of the claims and to instruct you about the meaning.  It is your role to apply my definitions to the issues that you are asked to decide.

### 2.3     <u>CLAIM CONSTRUCTION</u>

As you have heard during the trial, I have already determined the meaning of certain terms in the asserted claims of the '386 and '502 patents.  In your notebook, you have a document reflecting those meanings.  You are to apply my definitions of the terms I have construed and the ordinary meaning in the field of the patent for the remaining terms in the claims.  My interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity.  Those issues are yours to decide.

I have construed two terms in the asserted claims as follows:

The term "Mach-derived" means "derived from an operating system kernel developed at Carnegie Mellon University (CMU) from 1985 to 1994 but does not include Windows- or DOS-based systems, nor does it include Unix-based systems that are not derived from this kernel."

The term "Mach context" or "Mach contexts" means "context [or contexts] running on a Mach-derived operating system."

### 2.4     <u>PATENT INFRINGEMENT GENERALLY</u>

I will now instruct you on how to decide whether Aqua Connect has proven that TeamViewer infringed any of the claims of the '386 and '502 patents.

In this case, there are three possible ways that the asserted claims may be infringed: (1) direct infringement; (2) induced infringement and (3) contributory infringement. Induced infringement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement.

In order to prove infringement, Aqua Connect must prove that the requirements for direct and indirect infringement are met by a preponderance of the evidence. Infringement is assessed on a claim-by-claim basis. Therefore, you, the jury, must determine infringement for each asserted claim separately.

I will now explain each of these types of infringement in more detail.

**2.5**     <u>**DIRECT INFRINGEMENT**</u>

In order to prove direct infringement, Aqua Connect must prove by a preponderance of the evidence that TeamViewer made, used, sold, offered for sale within, or imported into the United States a product, or that TeamViewer performed a method, that meets all of the requirements of the asserted claim, and did so without the permission of Aqua Connect during the time the '386 and '502 patents were in force.

You must determine, separately for each asserted claim, whether or not there is infringement. To determine infringement, you must compare the accused products or methods with each asserted claim to determine whether each and every one of the requirements of that claim is met. A patent claim is infringed only if the product or method of use of a product includes each and every limitation in that patent claim. There is no direct infringement if the accused product, or methods performed by users of the accused product, do not meet each and every element of a claim.

**2.6**       **INDIRECT INFRINGEMENT – INDUCED INFRINGEMENT**

Aqua Connect alleges that TeamViewer is liable for infringement by actively inducing TeamViewer's customers to directly infringe the '386 and '502 patents.  For TeamViewer to have induced infringement of a claim, TeamViewer must have induced another to directly infringe that claim.  Inducing infringement cannot occur unintentionally; induced infringement requires that the inducing party specifically intended users of the accused products to infringe the asserted patents.

As with direct infringement, you must determine whether there has been induced infringement on a claim-by-claim basis.  In order to be liable for inducing infringement, Aqua Connect must prove by a preponderance of the evidence that:

(1) TeamViewer's customers directly infringed the asserted claims of the '386 and '502 patents;

(2) TeamViewer took action during the time the '386 and '502 patents were in force that was intended to cause and led to the infringing acts by TeamViewer's customers;

(3) TeamViewer was aware of the '386 and '502 patents; and

(4) TeamViewer knew that the acts it was causing would infringe the patents.

If you find that TeamViewer was aware of the patents but had a good-faith, reasonable belief that the acts it encouraged did not infringe the asserted patents, you may find that TeamViewer lacked the required intent for induced infringement and thus is not liable for induced infringement.

## 2.7   <u>INDIRECT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT</u>

Aqua Connect also alleges that TeamViewer has contributed to the direct infringement of the '386 and '502 patents by another.   As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

For there to be contributory infringement by TeamViewer, someone other than TeamViewer must directly infringe a claim of the '386 and '502 patents; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone other than TeamViewer has directly infringed the '386 and '502 patents, then contributory infringement exists if you find that Aqua Connect has proven by a preponderance of the evidence that:

(1)     TeamViewer sold, offered to sell or imported within the United States an important component of the infringing part of the accused remote access products and methods;

(2)     The component is not a common component suitable for non-infringing use; and

(3)     TeamViewer supplied the component with knowledge of the '386 and '502 patents and knowledge that the component was especially made or adapted for use in a manner that infringes the claim.

A "common component suitable for non-infringing use" is a common component that has uses other than as a component of the patented product or other than for use in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

### 2.8     <u>INVALIDITY – GENERALLY</u>

I will now instruct you on the rules you must follow in deciding whether or not TeamViewer has proven that the asserted claims are invalid.  As I previously told you, to prove that any claim of a patent is invalid, TeamViewer must persuade you by clear and convincing evidence that the claim is invalid.

Like infringement, you must determine whether each asserted claim is invalid on a claim-by-claim basis.

### 2.9    INVALIDITY – PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the time of invention.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1)    the levels of education and experience of persons working in the field;

(2)    the types of problems encountered in the field; and

(3)    the sophistication of the technology.

A person having ordinary skill in the art would have at least a Bachelor of Science (or equivalent) degree in electrical engineering, computer engineering, computer science, or a related field, including familiarity with operating systems, and at least 2-3 years of work experience in computer networking or a related field.  Alternatively, a Master's Degree in electrical engineering, computer engineering, computer science or a related field could be substituted for the at least 2-3 years of work experience.

11

### 2.10   <u>INVALIDITY – PRIOR ART</u>

For someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art.  Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

You should consider the prior art in determining whether the claims of the '386 and '502 patents are anticipated or obvious.

### 2.11   <u>INVALIDITY – ANTICIPATION</u>

As I just said, for someone to be entitled to a patent, the invention must actually be "new." If an invention is not new, it is said to be "anticipated."  TeamViewer contends that the asserted claims of the Asserted Patents are invalid because the claimed inventions are anticipated. Specifically, TeamViewer contends that U.S. Patent No. 8,166,518 to Price, Epard and Griffin anticipates claims 25 and 27 of the '386 patent and claims 25 and 27 of the '502 patent.

Anticipation must be determined on a claim-by-claim basis.  TeamViewer must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art.  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim.  The claim requirements may either be disclosed expressly or inherently – that is, necessarily implied – but must be disclosed in sufficient detail that a person having ordinary skill in the art of the invention, looking at that one reference, could make and use the claimed invention.

### 2.12    **INVALIDITY – OBVIOUSNESS**

Even if an invention was not identically disclosed or described in a single prior art reference before it was made by an inventor, to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent before the effective filing date of the patent.  TeamViewer may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the field of computer networks at the time the patent was filed.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of computer networks at the time the patent was filed, the scope and content of the prior art, any differences between the prior art and the claimed invention and, if present, objective evidence or secondary considerations, which I will describe shortly.  Do not use hindsight; consider only what was known at the time of the patent's effective filing date.

The mere existence of each element of the claimed invention in the prior art does not prove obviousness.  Most, if not all, inventions rely on building blocks of prior art.  In considering whether a claimed invention is obvious, you should consider whether, at the time of the patent's effective filing date, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine or modify the known elements in the prior art in the way that the claimed invention does, taking into account such factors as:

1.    whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

2.    whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3.    whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

4.      whether the prior art teaches away from combining elements in the claimed invention; and

5.      whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions; however, "obvious to try" is not sufficient to prove obviousness in unpredictable technologies.

Finally, in determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention was obvious, such as:

a.      whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure, advertising, or similar activities);

b.      whether the claimed invention satisfied a long-felt need;

c.      whether there were changes or related technologies or market needs contemporaneous with the claimed invention; and

d.      whether others in the field praised the claimed invention.

In determining whether the claimed invention was obvious, you must consider each claim separately.

3.    **DAMAGES**

    3.1    **DAMAGES GENERALLY**

I will next instruct you on damages.  You must not take these instructions as implying that either party is entitled to recover damages.  Instructions regarding the measure of damages are given for your guidance in the event you find in favor of Aqua Connect from a preponderance of evidence in the case in accordance with the other instructions.

If you find that use of the accused products infringes any of the asserted claims and that the infringed claim(s) are not invalid, you must determine the amount of damages to be awarded to Aqua Connect for the infringement.  If, however, you find that every asserted claim is either invalid or not infringed, then you should not consider damages in your deliberations.

Aqua Connect has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Aqua Connect establishes that it more likely than not has suffered.  While Aqua Connect is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.  The damages you award must be adequate to compensate Aqua Connect for the infringement.  They are not meant to punish an infringer.

**3.2** **DATE OF COMMENCEMENT OF DAMAGES**

In determining the amount of damages, you must determine when the damages began.

If you find that TeamViewer directly infringed a valid claim of the '502 patent, then damages for that direct infringement begin on December 30, 2014.  If you find that TeamViewer directly infringed a valid claim of the '386 patent but did not directly infringe a valid claim of the '502 patent, then damages for direct infringement begin on May 2, 2017.

If you find that TeamViewer did not directly infringe but only indirectly infringed a valid claim of the '502 patent or the '386 patent or both, then damages began no earlier than the date that TeamViewer received notice of the patent(s) you found to be infringed.

### 3.3    REASONABLE ROYALTY – THE HYPOTHETICAL NEGOTIATION

Aqua Connect is seeking damages in the amount of a reasonable royalty.  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed inventions.  A reasonable royalty is the amount of royalty payment that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

### 3.4    REASONABLE ROYALTY – RELEVANT FACTORS UNDER THE HYPOTHETICAL NEGOTIATION

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent(s):

1.    Any royalties received by Aqua Connect for the licensing of the patent-in-suit, to the extent those royalties prove or tend to prove an established royalty.

2.    The rates paid by TeamViewer to license other patents comparable to the '386 and '502 patents.

3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.    Aqua Connect's established policy and marketing program (if any) to maintain its right to exclude others from using the patented inventions by not licensing others to use the inventions, or by granting licenses under special conditions designed to preserve that exclusivity.

5.    The commercial relationship between Aqua Connect and TeamViewer, such as whether or not they are competitors in the same territory in the same line of business.

6.    The effect of selling the patented product in promoting other sales of TeamViewer; the existing value of the inventions to Aqua Connect as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.    The duration of the '386 and '502 patents and the term of the license.

8.    The established profitability of the products made under the '386 and '502 patents; their commercial success; and their popularity.

9.    The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

10.    The nature of the patented inventions; the character of the commercial embodiments of it as owned and produced by or for Aqua Connect; and the benefits to those who have used the inventions.

11.     The extent to which TeamViewer has made use of the inventions; and any evidence that shows the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

13.     The portion of the profit that arises from the patented inventions themselves as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor (such as Aqua Connect) and a licensee (such as TeamViewer) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article or process embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

### 3.5  <u>REASONABLE ROYALTY – COMPARABLE AGREEMENTS</u>

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.  If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement.  When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

### 3.6 <u>REASONABLE ROYALTY – ATTRIBUTION/APPORTIONMENT</u>

The amount you find as damages must be based on the value attributable to the patented inventions, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or TeamViewer's size or market position.  A royalty compensating the patent holder for damages must reflect the value attributable to the allegedly infringing features of the accused product, and no more.  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

The ultimate reasonable royalty award must be based on the incremental value that the patented inventions add to the end product.  For that reason, you should award damages based on a royalty rate or a lump sum that reflects the incremental value.

### 3.7    DAMAGES – AVAILABILITY OF NON-INFRINGING ALTERNATIVES

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing alternatives to the patented invention.  A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or a comparable result that does not require using the asserted claims in the United States. That is, the substitute must not contain all of the features required by the asserted claims of the patent.  To be an acceptable non-infringing alternative, it must also have been "available" throughout the period of the infringement.  An alternative product may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period. You may consider whether a party had the necessary equipment, know-how, and experience to implement the alternative and the time and cost to the party of implementing the alternative.  An acceptable alternative must also be a product that is licensed under the patent or that does not infringe the patent.  Defendants bear the burden of proving the existence of acceptable non-infringing alternatives.

*    *    *

4.      **DELIBERATION AND VERDICT**

    4.1      **INTRODUCTION**

Now let me finish up by explaining some things about your deliberation in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

### 4.2     <u>UNANIMOUS VERDICT</u>

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  I will review it with you in a moment.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and my deputy will read aloud your verdict.

### 4.3    <u>**DUTY TO DELIBERATE**</u>

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that, your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.  Listen carefully to what the other jurors have to say, and then decide for yourself.

### 4.4     <u>SOCIAL MEDIA</u>

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 4.5      <u>COURT HAS NO OPINION</u>

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.