**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AQUA CONNECT, INC. a Nevada corporation, and STRATEGIC TECHNOLOGY PARTNERS, LLC, a Nevada limited liability company,<br><br>               Plaintiffs,<br><br>     v.<br><br>TEAMVIEWER US, Inc. and TEAMVIEWER GERMANY GMBH,<br><br>               Defendants. | C.A. No. 18-01572-MN<br><br>Consolidated |

**TEAMVIEWER'S OPENING BRIEF IN
SUPPORT OF ITS MOTION TO STAY PENDING *EX PARTE* REEXAMINATION**

**TABLE OF CONTENTS**

Page

I.     BRIEF STATEMENT OF FACTS ............................................................................... 2

II.    LEGAL STANDARD .................................................................................................... 4

III.   ARGUMENT .................................................................................................................. 5

      A.   A Stay Will Likely Moot the Case or Simplify the Issues. ..................................... 5

      B.   The Later Stage of the Case Is Neutral or Substantially Outweighed by
          Potential for Simplification. ................................................................................... 8

      C.   Aqua Connect Will Not Be Prejudiced by a Stay. ............................................... 10

          1.   The Relationship Between Aqua Connect and TeamViewer Favors
              a Stay ......................................................................................................... 10

          2.   TeamViewer Was Diligent in Seeking Post-Trial EPRs and a Stay ........ 11

          3.   The Status of the Review Proceedings ..................................................... 12

IV.   CONCLUSION ............................................................................................................ 13

1610201822

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*,
  No. 18-366-WCB, 2020 WL 5517283 (D. Del. Sept. 11, 2020) ...................................... *passim*

*Broad. Innovation, L.L.C. v. Charter Commc'n, Inc.*,
  No. A03-2223-ABJ-BNB, 2006 WL 1897165 (D. Colo. July 11, 2006) .................................9

*Chrimar Sys., Inc. v. ALE USA Inc.*,
  785 F. App'x 854 (Fed. Cir. 2019) ........................................................................................7

*CyWee Grp. Ltd. v. Samsung Elecs. Co.*,
  No. 2:17-140-WCB-RSP, 2019 WL 11023976 (E.D. Tex. Feb. 14, 2019) ............................10

*Ethicon LLC v. Intuitive Surgical, Inc.*,
  No. 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) ................................................8

*Ever Win Int'l Corp. v. Radioshack Corp.*,
  902 F. Supp. 2d 503 (D. Del. 2012) .......................................................................................8

*Fresenius USA, Inc. v. Baxter Int'l*
  721 F.3d 1330, 1340 .................................................................................................... 5, 6, 7

*Moffitt v. Garr*,
  66 U.S. 273 (1861) ................................................................................................................5

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
  No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013) ...............................................8

*Princeton Digit. Image Corp. v. Konami Digit. Ent. Inc.*,
  No. 12-1461-LPS-CJB, 2014 WL 3819458 (D. Del. Jan. 15, 2014) .................................8, 10

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*,
  549 F.3d 842 (Fed. Cir. 2008) ...............................................................................................4

*Stryker Trauma S.A. v. Synthes (USA)*,
  No. 01-3879 (JLL), 2008 WL 877848 (D.N.J. Mar. 28, 2008) .............................. 6, 9, 11, 12

*TC Tech. LLC v. Sprint Corp.*,
  No. 16-153-WCB, 2021 WL 4521045 (D. Del. Oct. 4, 2021)....................................... *passim*

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014) .......................................................................................6, 11

*XY, LLC v. Trans Ova Genetics*,
 890 F.3d 1282 (Fed. Cir. 2018)..................................................................................................7

**Statutes**

35 U.S.C. § 302..............................................................................................................................12

Leahy-Smith America Invents Act, Pub. L. No. 112-29 (2011)......................................................4

**Other Authorities**

157 Cong. Rec. S1363 ....................................................................................................................5

Federal Rules of Civil Procedure Rule 58(b)..............................................................................2, 3

The TeamViewer Defendants respectfully ask the Court to stay the impending damages retrial in this action pending Final Office Actions in two *ex parte* reexaminations ("EPRs") because the patent office has now rejected all four asserted claims of the two patents in this case: U.S. Patent No. RE46,386 ("the '386 Patent") and U.S. Patent No. 8,924,502 ("the '502 Patent"). The factors weigh in favor of a stay because it will (1) potentially eliminate this dispute, or at least avoid a damages retrial that could be mooted if the asserted claims are amended; (2) relieve the parties and the Court of several onerous events on the horizon, including the yet-to-be-scheduled re-trial on damages; and (3) not cause Aqua Connect any undue prejudice or disadvantage.

First, a stay pending resolution of the EPRs has a strong potential to conclude this matter. On May 20, 2024, the United States Patent Office rejected all four asserted patent claims in Initial Office Actions in two *ex parte* reexaminations that TeamViewer filed. If the Patent Office's rejections are made final, it would dispose of this lawsuit entirely. Even if the Patent Office reverses course and allows one or more of the original claims to survive, that will still significantly simplify the case by removing issues from the case, adding further intrinsic evidence to the patents, and simplifying the damages profile for the jury to consider at the retrial (and, with the stay, avoid a third trial on damages if the Patent Office's decision disrupts the retrial verdict). By delaying retrial, post-trial briefing, and post-trial appeals until Final Office Actions in the EPRs (expected as soon as early 2025), not only will this Court save resources, it may likely wash its hands of this matter entirely.

Second, while the late stage of this case would typically cut against a stay, here this factor is neutral at worst because: (1) the retrial on damages has not yet been scheduled; and (2) significant events lie ahead, including the Court's decision on Aqua Connect's motion for

1

reargument (D.I. 298), all pretrial activities for the damages retrial, a pretrial conference, and a multi-day jury trial. For this reason, it is no surprise that at least one other court in this circuit has granted a stay pending *ex parte* reexamination of all asserted claims where a jury verdict was rendered against defendant as to infringement and validity, but a trial on damages remained. Even if the Court finds this factor weighs against a stay, courts grant stays even at advanced stages where the potential for simplification outweighs the late stage of the case, including when a case is as little as two months from trial. Here, the potential for "ultimate simplification"—the elimination of this case—outweighs the case's relatively late stage.

Last, a stay will not unduly prejudice Aqua Connect. Aqua Connect does not practice the Asserted Patents, so money damages are its only remedy. Those money damages will still be available if any claims of the Asserted Patents survive EPR.

Accordingly, the three stay factors viewed together weigh in favor of a stay. Thus, this Court should exercise its discretion to stay this litigation pending the resolution of TeamViewer's EPRs by the Patent Office.

## I.   BRIEF STATEMENT OF FACTS

From August 8, 2022 to August 12, 2022, the Court presided over a five-day jury trial in this matter. *See* D.I. 255 ¶ 2; *see also* D.I. 281, 283, 285, 286, and 288. The jury found that both macOS and iOS versions of Defendants' product directly infringe claims 25 and 27 of the '502 Patent and claims 25 and 27 of the '386 Patent. D.I. 269 at 2. The jury found Defendants liable for induced and contributory infringement of those claims. *Id.* at 3-4. The jury further found that Defendants had failed to prove that any claim was invalid as anticipated or obvious. *Id.* at 5. Plaintiffs were awarded $5,700,000 in damages in the form of a lump-sum payment. *Id.* at 6. On August 22, 2022, the Court entered judgment on the jury verdict under Rule 58(b) of the Federal Rules of Civil Procedure. *See* D.I. 274.

The Court addressed the parties' post-trial motions in its September 29, 2023 Memorandum Opinion. D.I. 296. The Court upheld the jury finding that Defendants used the accused iOS software in the United States in at least one act of direct infringement of the asserted system and method claims. *Id.* at 17. The Court found insufficient evidence to support a finding that Defendants used the accused macOS software in the United States so as to directly infringe the asserted system and method claims, granting judgment as a matter of law in Defendants' favor on that issue. *Id.* at 18. The Court found no substantial evidence to support a finding of pre-suit knowledge of the '502 and '386 Patents and, on that basis, limited the verdict as to liability for induced and contributory infringement to October 2018 and later. *Id.* at 24. Accordingly, the Court vacated part of the jury verdict. *Id.* at 25.

The Court was unable to discern whether the jury award would remain the same if any of the jury's various infringement findings change. *Id.* at 33. Therefore, the court also vacated the damages award and ordered a new trial on damages. *Id.* The damages trial in this matter has yet to be scheduled. D.I. 305.

Meanwhile, on December 23, 2022, TeamViewer filed requests for *ex parte* reexamination (Application Nos. 90/019,142 and 90/019,143) challenging all four claims asserted in this case. *See* Exs. A (Non-Final Action in 90/019,142) and B (Non-Final Action in 90/019,143). On February 10, 2023, while the Court was still considering post-trial motions, the United States Patent Office granted reexamination of all four claims, finding that the identified prior art raised substantial new questions of patentability. Ex. A at Page 2; Ex. B at Page 2; D.I. 295. Aqua Connect filed petitions to vacate the reexaminations on May 17, 2023, which the Patent Office denied on March 20, 2024. D.I. 304. On May 20, 2024, the Patent Office rejected all four claims as invalid over the prior art. Exs. A and B. Patent Owner's responses are due by

3

July 20, 2024. Final Office Actions in EPRs are typically issued within about 26 months from filing, and so Final Office Actions in this matter could be expected as soon as early 2025. All asserted claims currently stand rejected by the Patent Office.

## II.    LEGAL STANDARD

District courts have "inherent power . . . to grant a stay pending reexamination of a patent." *TC Tech. LLC v. Sprint Corp.*, No. 16-153-WCB, 2021 WL 4521045, at *1 (D. Del. Oct. 4, 2021) (quoting *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008)). District courts consider three factors when determining whether to grant a stay pending Patent Office proceedings with respect to patents in suit: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Id.* at *2 (citation omitted). "In evaluating whether undue prejudice or a clear tactical advantage exists, courts in this district typically examine four factors: (1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Id.* at *8.

The legislative history of the Leahy-Smith America Invents Act, Pub. L. No. 112-29 (2011) confirms that Congress intended "for district courts to be liberal in granting stays" pending post-grant review, and that "*Congress intended to place 'a very heavy thumb on the scale in favor of a stay being granted*'" once the Patent Office institutes review. *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366-WCB, 2020 WL 5517283, at *3-5 (D. Del. Sept. 11,

2020) (summarizing legal framework and case law in the context of an *ex parte* reexam stay request) (quoting 157 Cong. Rec. S1363, 2011) (emphasis added).

### III.  ARGUMENT

The three factors viewed together weigh strongly in favor of a stay. First, TeamViewer's EPRs have a strong potential to eliminate Aqua Connect's claims and therefore moot the parties' as-yet scheduled trial on damages and all remaining pre- and post-trial work. Second, the late stage of the case is neutral where, as here, the trial date is not set and significant work remains ahead. Third, a stay will not affect Aqua Connect's ability to receive a full remedy, nor will it provide TeamViewer any unfair advantage.

### A.  A Stay Will Likely Moot the Case or Simplify the Issues.

TeamViewer's EPRs stand to moot this matter entirely or simplify the issues to be resolved, the "most important factor" in the analysis. *TC Tech.*, 2021 WL 4521045, at *4.

The Patent Office's Non-Final Actions have rejected all asserted claims in view of the prior art. Exs. A and B. In approximately 80% of instituted *ex parte* reexaminations, the claims are cancelled or amended. Ex. C, *Ex Parte* Reexamination Filing Data - September 30, 2023. Thus, it is likely that TeamViewer's EPRs will completely dispose of the asserted claims of the Asserted Patents, meaning the to-be-scheduled damages trial would be entirely moot. *Fresenius USA, Inc. v. Baxter Int'l*, Inc., 721 F.3d 1330, 1340 ("[U]nder either the reissue or reexamination statute, if the [Patent Office] confirms the original claim in identical form, a suit based on that claim may continue, but if the original claim is cancelled or amended to cure invalidity, the patentee's cause of action is extinguished and the suit fails."), 1344-45 ("As the Supreme Court held in [*Moffitt v. Garr*, 66 U.S. 273 (1861)], 'unless [a patent] exists, and is in force at the time of trial and judgment, the suits fail.' 66 U.S. at 283. [Patent Owner]'s problem is that it no longer has a viable cause of action in the pending case."). Because the EPRs are 80% likely to dispose

5

of the entire litigation, the potential that a short stay would lead to the "ultimate simplification" strongly favors a stay. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014).

Even if the EPRs do not eliminate all claims, claim amendments resulting from the EPRs may also simplify issues, *see Stryker Trauma S.A. v. Synthes (USA)*, No. 01-3879 (JLL), 2008 WL 877848, at *3 (D.N.J. Mar. 28, 2008), or affect infringement findings in this matter. In *Stryker*, the court reasoned that while it had already held trial in the infringement phase of the case, the final decision of the Patent Office on reexamination of the asserted patent still presented "a substantial likelihood of simplifying the issues." *Id.* "Indeed, if the [Patent Office] rejects or amends claims 1 and 2 of the [asserted] patent, proceedings may be greatly simplified." *Id.* "Given the present posture" of that case, the court found that the simplification of issues factor weighed in favor of granting the stay. *Id.* The simplification factor here even more strongly weighs in favor of a stay than in *Stryker*, because, in that case, the request for reexamination had only just been granted. *Id.* at *1. Here, the Patent Office has already rejected all asserted claims.

A brief stay now would conserve judicial economy and avoid the scenario in *Fresenius*. In that case, the Patent Office cancelled asserted claims in a reexamination, and the Federal Circuit affirmed. *Fresenius*, 721 F.3d at 1332. Several years earlier, the district court had ruled that the accused infringer had failed to prove the asserted patent claims invalid. *Id.* at 1332-33. But the case had not reached final judgment at the time the Patent Office issued its ruling because, on remand from appeal to the Federal Circuit, the district court still had to determine damages. *Id.* at 1333-34. Without a final judgment in place, the Federal Circuit ordered the case be dismissed on remand due to the Patent Office cancelling the claims in the reexamination. *Id.*

6

at 1341-47. The court held that statute requires that "a final [Patent Office] decision affirmed by this court be given effect in pending infringement cases that are not yet final." *Id.* at 1346.

The present case is on all fours with *Fresenius*. There is no final judgment, and there must be a retrial on damages, which likely will be subject to additional post-trial briefing and potential appeal. Concurrently, the Patent Office has already rejected the asserted claims and will eventually issue Final Office Actions, likely resulting in claim cancellation or amendment, and perhaps appeals. If the Patent Office decisions reach final judgment following any appeals before a final judgment in this Court, such result would be binding on the pending litigation in this court because "the patentee's cause of action is extinguished and the suit fails." *Id.* at 1340; *Chrimar Sys., Inc. v. ALE USA Inc.*, 785 F. App'x 854 (Fed. Cir. 2019) (vacating district court's judgment in patentee's favor following affirmance of Patent Office's unpatentability finding while infringement case before the district court was pending appeal) (non-precedential).[1] This Court can pause this litigation and stop expending any further resources, time, and effort on this case while the Patent Office finalizes its mission-critical finding that these patents should never have issued in the first place. *See Brit. Telecomms.*, 2020 WL 5517283, at *8 ("the prospect of . . . a conflict between a district court judgment and the [Patent Office]'s ruling would be unseemly and should be avoided if possible").

Given the potential to moot a new damages trial and post-trial work, and avoid a potential third trial on damages following the EPRs, the first factor weighs heavily in favor of a stay.

---

[1] "A case is 'pending,' [*XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018)], when it is not yet final in the sense that 'the litigation [is] entirely concluded so that [the] cause of action [against the infringer] was merged into a final judgment . . . one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment,' *Fresenius*, 721 F.3d at 1341. Such finality generally does not exist when a direct appeal is still pending." *Chrimar Sys., Inc. v. ALE USA Inc.*, 785 F. App'x 854, 856 (Fed. Cir. 2019).

### B. The Later Stage of the Case Is Neutral or Substantially Outweighed by Potential for Simplification.

While the later stage of this proceeding would typically cut against a stay, this factor is neutral in this case because the retrial is not yet scheduled and significant work for the Court and the parties lies ahead. *Princeton Digit. Image Corp. v. Konami Digit. Ent. Inc.*, No. 12-1461-LPS-CJB, 2014 WL 3819458, at *4 (D. Del. Jan. 15, 2014) (granting stay where "[t]rial dates have not been set"); *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 WL 3353984, at *5 (D. Del. July 2, 2013) (granting stay where "no trial date has been set"); *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 507 (D. Del. 2012) (same). Even if the Court schedules trial for October 2024, the earliest date the parties are available, courts in this district have granted stays when significant work laid ahead for the parties and Court, including resolving Aqua Connect's motion for reargument, all pretrial work, the pretrial conference, a jury trial, and post-trial briefing. *Brit. Telecommunications*, 2020 WL 5517283, at *6 (stay pending EPR granted where motion to stay filed three months before trial) ("While there has been substantial progress in this case, the most burdensome parts of the case for the parties and the court—preparation for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future."); *TC Tech.*, 2021 WL 4521045, at *7-8 (granting stay pending EPR following Non-Final Office Action rejecting all asserted claims as invalid over prior art where motion to stay filed approximately two months before trial). This case is at an efficient stopping point just before preparation for the damages trial has begun, and so this factor is neutral at worst. *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019) ("[A]lthough this case is further along than is typical for a motion to stay, it is indeed at an efficient stopping point, and any weight given to this factor is outweighed by the likelihood that the issues for trial will be simplified by a stay.").

Even if the Court finds this factor weighs against a stay, it is significantly outweighed by the likelihood that the issues for a trial will be disposed of or greatly simplified by a stay. *See Stryker*, 2008 WL 877848, at *4 ("Here, this Court has only held a jury trial in the first phase of this case, resulting in a verdict for Plaintiff, but damages at this time remain unliquidated . . . a balancing of the benefits and the costs with respect to staying the action at this stage in the litigation, as opposed to going forward under the shadow of a pending reexamination, causes this Court to find that the factors as a whole weigh in favor of granting Defendant's motion for a stay pending reexamination."); *TC Tech.*, 2021 WL 4521045, at *7-8; *Brit. Telecomms.*, 2020 WL 5517283, at *6. In *Stryker*, the jury had already rendered a verdict against defendant, but even then it was not too late to simplify the remaining issues in the case, including a pending damages trial, and the court granted the stay. 2008 WL 877848, at *3-4. This case is similar, except that in this case the Patent Office has already issued Non-Final Rejections.

As another example, in *TC Tech.* where the motion to stay pending EPR was filed about two months before trial, Judge Bryson found:

> The relatively advanced stage of the proceedings in this case is entitled to weight, but when considered in view of the costs involved in preparing and conducting a trial . . . the "state of the proceedings" factor cuts only moderately against issuing a stay. In short, the weight assigned to the state of the proceedings is not dispositive and must be balanced against other factors, including the prospect that a stay—and the [Patent Office's] ruling in the interim—will simplify the issues for trial, very possibly obviating the need for a trial altogether, thereby reducing the burden on the parties and the court.

*TC Tech.*, 2021 WL 4521045, at *8 (citations omitted).

Here, the potential for simplification outweighs the advanced stage of the proceeding for the reasons previously stated. The case is by no means over—the damages trial remains, along with all pretrial and post-trial work. *See Brit. Telecomms.*, 2020 WL 5517283, at *6; *Broad. Innovation, L.L.C. v. Charter Commc'n, Inc.*, No. A03-2223-ABJ-BNB, 2006 WL 1897165, at

*8-10 (D. Colo. July 11, 2006) (stay granted less than three months before trial; court cited cases in which stays were granted as little as 20 days before trial); *CyWee Grp. Ltd. v. Samsung Elecs. Co.*, No. 2:17-140-WCB-RSP, 2019 WL 11023976, at *6-*7 (E.D. Tex. Feb. 14, 2019) (stay granted three months before trial). The Court, and the public will all benefit from a stay. In light of the high likelihood that the unamended claims will not survive reexamination, holding the damages trial now would be a needless waste of the Court's time and resources.

### C. Aqua Connect Will Not Be Prejudiced by a Stay.

The third factor, "undue prejudice," weighs in favor of a stay when the nonmovant's ability to obtain an adequate remedy will not be diminished, and the moving party will not obtain an unfair advantage in the case. *Brit. Telecomms.*, 2020 WL 5517283, at *6-*9. In evaluating whether undue prejudice or a clear tactical advantage exists, courts in this district typically examine four factors: (1) the relationship of the parties; (2) the timing of the request for review; (3) the timing of the request for a stay; and (4) the status of the review proceedings. *TC Tech.*, 2021 WL 4521045, at *8. These considerations taken together favor a stay.

### 1. The Relationship Between Aqua Connect and TeamViewer Favors a Stay

Aqua Connect does not practice the Asserted Patents, makes no products, is developing no new product code, has no market share, is not among TeamViewer's many competitors, and apparently only has a very small number of active legacy customers that it was servicing as of 2022. *See* Ex. D, Trial Tr., Vol. 1 at 168:17-20, 175:23-178:2; Vol. 2 at 601:17-602:21; *see Princeton Digit. Image*, 2014 WL 3819458, at *6 ("Here, there is no dispute that the parties are not direct competitors. Plaintiff is a non-practicing entity that does not participate in the relevant market and will not suffer any loss of market share or erosion of goodwill due to a stay. . . . Plaintiff's damages, if any, are purely monetary and can be accommodated by the award of

interest if it ultimately prevails."). Direct competition increases the chances that a delay in the adjudication will expose the non-*requesting* party to loss of sales and an erosion of goodwill. But a nonpracticing plaintiff or the presence of multiple players in a given market decreases the likelihood of any harm to the plaintiff. *Brit. Telecomms.*, 2020 WL 5517283, at *7.

Further, Aqua Connect seeks no injunctive relief. This case is only about monetary damages, and if its patents survive reexamination, Aqua Connect can obtain any awarded monetary damages at the conclusion of the district court litigation. *See VirtualAgility*, 759 F.3d at 1318 (recognizing that a stay "will not diminish the monetary damages to which [patentee] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages"); *Brit. Telecomms.*, 2020 WL 5517283, at *7 (collecting cases and recognizing that "[t]he absence of any specific hardship or inequity is a factor that weighs against a finding of undue prejudice"). Given that, a short delay pending the EPRs is not "undue prejudice." Indeed, courts have held that the delay inherent in a motion to stay is not "undue prejudice," and it alone cannot defeat a motion to stay. *See Brit. Telecoms*, 2020 WL 5517283, at *6 (collecting cases). Nor can the general interest in having one's patent rights promptly enforced defeat a motion to stay. *See id.* at *6-*7.

### 2. TeamViewer Was Diligent in Seeking Post-Trial EPRs and a Stay

TeamViewer seeks a present stay of the case just days after the Patent Office issued its Non-Final Actions. Exs. A and B.[2] This case is already in its sixth calendar year on the docket. A delay of approximately nine more months will not prejudice Aqua Connect. *See Stryker*, 2008 WL 877848, at *3 ("Both parties cite to statistics on the average pendency of reexaminations,

---

[2] TeamViewer waited until after the Patent Office's Non-Final Actions to move for a stay to avoid asking the Court to speculate on the reexaminations' likely outcomes.

11

and the Court only takes notice of these statistics insofar that whether the average period for reexamination is 22.1 months or 22.8 months, in the context of a patent case entering its seventh calendar year on the docket, such periods of time are not sufficiently indefinite to warrant denial of the stay on that basis."). The stay will not be indefinite—it would be through the Final Office Actions of the EPRs, at which point the parties and Court can reevaluate how best to resolve this matter.

In *Stryker*, when the stay was sought following an adverse jury verdict, the district court reasoned "while delay and tactical advantage are concerns in this case, any delay engendered by a stay would by no means be so indefinite as to mandate denial of Defendant's motion." *Id.* at *2. While TeamViewer filed the EPRs shortly after the August 2022 jury verdict, that does not move the needle on this factor. TeamViewer has the statutory right to request reexamination, 35 U.S.C. § 302, diligently sought the EPRs post-trial, and did so not in an effort to gain a tactical advantage in this action, but to invalidate bad patents. *See id.* ("While [defendant's] course of action does result in an extra post-verdict means of attacking the result achieved before the jury, and a resultant tactical advantage, this Court finds that denial of a stay because one party timed legitimate procedural actions in such a manner as to best serve its own interests, at least in the current case, does not present the kind of inequitable action warranting a denial of the stay.").

The timing of the request of a stay causes no prejudice to Aqua Connect. To the contrary, TeamViewer seeks to conserve the Court's and all parties' resources by staying the district court litigation pending the Patent Office's final determination of patentability.

### 3. The Status of the Review Proceedings

The Patent Office has already rejected the four asserted claims. Exs. A and B. The review proceeding is farther along than in other cases where stays were granted, so the risk of prejudice is lower than in other cases. *TC Tech.*, 2021 WL 4521045, at *9 (collecting cases). A stay will

12

require the damages trial be postponed for a short period, until after the Final Office Actions in the EPRs, which are expected as soon as early 2025. If the claims somehow survive the reexam unamended, the damages trial can be held soon thereafter, and neither party will be prejudiced.

## IV. CONCLUSION

Because the three factors viewed together weigh in favor of a stay, TeamViewer respectfully asks the Court to grant its motion and stay this action until the Final Office Actions in the EPR proceedings.

Dated: May 30, 2024

Michael Jay (admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Telephone: (310) 595-3000
Facsimile: (310) 595-3300
michael.jay@us.dlapiper.com

Paul Steadman (admitted *Pro Hac Vice*)
Benjamin Mueller (admitted *Pro Hac Vice)*
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: (312) 368-2135
Facsimile: (312) 251-2850
paul.steadman@us.dlapiper.com
benjamin.mueller@us.dlapiper.com

William L. Bartow (admitted *Pro Hac Vice)*
**DLA PIPER LLP (US)**
1650 Market Street, Suite 4900
Philadelphia, PA 19103
Telephone: (215) 665-3300
William.bartow@us.dlapiper.com

Gianni Minutoli (admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
11911 Freedom Dr., Suite 300
Reston, VA 20190
Telephone: (703) 773-4045
Facsimile: (703) 773-5019
ganni.minutoli@us.dlapiper.com

**DLA PIPER LLP (US)**

*/s/ Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)
Angela C. Whitesell (DE Bar No. 5547)
Erin E. Larson (DE Bar No. 6616)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-3046
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@us.dlapiper.com
angela.whitesell@us.dlapiper.com
erin.larson@us.dlapiper.com

*Attorneys for Defendants TeamViewer US, Inc. and TeamViewer Germany, GmbH*